**STATE of Missouri,**
**Plaintiff/Respondent,**

v.

**Wayne SHOULTS, Jr.,**
**Defendant/Appellant.**

**No. ED 84000.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 25, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 23, 2005.

Application for Transfer Denied
April 26, 2005.

Craig Johnston, Assistant Public Defender, Columbia, MO, for appellant.

Shawn L. Naccarato, Karen L. Kramer, Assistant Attorney General, Jefferson City, MO, for respondent.

KATHIANNE KNAUP CRANE, Judge.

Defendant appeals from the judgment entered in a court-tried case finding him guilty of the class C felony of possession of methamphetamine, in violation of Section 195.202 RSMo (2000), and the class D felony of possession of anhydrous ammonia in a non-approved container, in violation of Section 578.154 RSMo (2000). The court sentenced him to three years imprisonment on each count, to be served concurrently. On appeal, defendant challenges the admission of the evidence seized from the automobile in which defendant was a passenger and defendant's post-arrest statements. We affirm.

The sufficiency of the evidence is not in dispute. The convictions were based on defendant's possession of a bag of 3.37 grams of methamphetamine inside a locked bag and a tank containing anhydrous ammonia while he was a passenger in another person's automobile. The appeal involves the circumstances surrounding the traffic stop and subsequent search of the automobile.

On the afternoon of January 9, 2002 in St. Louis County, Missouri, Officer Andria Van Mierlo stopped an automobile in which defendant was a rear-seat passenger for an expired temporary tag in the rear window. She advised the car's driver, Anthony Hoffman (the driver), of the purpose for the stop. The driver responded that he was aware of the expired tag and had already received a ticket for the violation. Officer Van Mierlo obtained identification from the driver, defendant, and a second passenger, and she returned to her vehicle for verification. Officer Van Mierlo returned to the automobile and asked the three occupants if they could "step out of the car" for her. At this point the car had been stopped for three or four minutes. She and the driver walked around to the rear of the car to look at the expired temporary tag, and either she or the driver removed it. She then gave the driver a verbal warning, since he had already received a ticket for the expired tag, returned his identification, and told him to properly register the car. The officer considered the three free to leave at that

point. She did not specifically advise them that they could leave because no one brought it up.

Officer Van Mierlo then asked the driver how he knew defendant. The driver replied that defendant had been walking down the street and asked him for a ride. Officer Van Mierlo knew the response was false because she had seen the driver and defendant in the driveway of the second passenger in the car a short time before. She also spoke to defendant and the second passenger whose stories conflicted with the driver's on this issue.

While she was talking to these individuals, two other officers arrived at the scene. Officer Van Mierlo asked the driver for permission to search his car. He was calm and cooperative and said, "Sure. Go ahead." He and the second passenger stood back and "seemed fine." She made this request about three minutes after asking the driver how he knew defendant. When Officer Van Mierlo began searching the automobile, defendant became very nervous, loud, belligerent, and combative, and began flailing his arms. One of the other officers told defendant to place his hands behind his back, and handcuffed him for safety.

During the search of the car, Officer Van Mierlo observed the top of a red metal tank with a valve on top and a box of aluminum foil inside an open canvas bag in the rear passenger compartment next to where defendant had been sitting. Based on her experience, Officer Van Mierlo thought the tank could be a container for anhydrous ammonia. When she removed the tank from the vehicle, the driver said, "That's not mine." He told her that defendant "put more stuff in the trunk." When Officer Van Mierlo asked defendant what was in the tank, defendant replied that he did not know because he found it on the side of the road.

Officer Van Mierlo then asked the driver if she could go into the trunk. He consented in a manner she felt was encouraging. She found a padlocked leather bag in the trunk. Defendant said that it contained legal papers, but when Officer Van Mierlo picked it up, it sounded as if jars were inside the bag rather than papers. Another officer asked defendant for the key to the bag. After unlocking the bag, Officer Van Mierlo found a green container with some white powdery residue, a green container with a bag containing an off-white rocky-type substance that was consistent with methamphetamine, a white tube with some off-white powder inside, used coffee filters, batteries, a knife, a bottle of denatured alcohol, hemostats, ephedrine, a scale, and a glass jar containing a brownish liquid. After finding the brownish liquid, the officers contacted the drug unit. Because these are all items used in the production of methamphetamine, Officer Van Mierlo arrested defendant for the production of methamphetamine.

Detective Joseph Smith and Sergeant Merly, both of the Drug Unit, and the Lemay Fire Department all reported to the scene. Because he could smell ammonia, Det. Smith tested the tank with a Drager test kit, which positively indicated the presence of anhydrous ammonia. He evacuated the area, and emptied the cylinder. Det. Smith determined that the tank did not comply with any state or federal law for the storage of anhydrous ammonia.

At the police station, Detective Smith advised defendant of his *Miranda* rights and interviewed him. Although he admitted the bag and its contents were his, defendant maintained that he had no idea what was in the tank because he found it on the side of the road.

At trial, the parties stipulated that there was a bag containing 3.37 grams of methamphetamine found in a green tube in the locked bag.

Prior to trial, defendant filed motions to suppress all items seized and all statements made by the defendant after the stop. The trial court denied defendant's motions to suppress. During trial defendant renewed his objection to all items obtained in the search of the car. Defendant also objected to the admission of defendant's statements to Det. Smith. He did not object to the statements he made to Officer Van Mierlo.

## DISCUSSION

For his sole point, defendant contends that the trial court erred in overruling his motion to suppress and in admitting the evidence seized from the driver's vehicle and defendant's post-arrest statements because the officer did not have the requisite reasonable suspicion to continue the detention and questioning after she gave the driver a warning, the continued questioning was not consensual, the driver could not consent to a search of defendant's belongings, defendant's consent to the search of his belongings was not voluntary, and the automobile exception did not authorize the search of defendant's belongings.

### a. *Standing*

■ Since he did not own the vehicle, defendant had no standing to challenge the search of the vehicle on Fourth Amendment grounds. *State v. Kovach*, 839 S.W.2d 303, 308–09 (Mo.App.1992). However, he could challenge the admission of evidence obtained as a result of his own detention, if illegal. *Id.* at 312.

### b. *Standard of Review*

■ We review the trial court's ruling on a motion to suppress to determine if there is sufficient evidence to support the ruling based on the complete record before the trial court. *State v. Slavin*, 944 S.W.2d 314, 317 (Mo.App.1997). We consider both the suppression hearing record and the trial record. *State v. Deck*, 994 S.W.2d 527, 534 (Mo. banc 1999). We will reverse the ruling if it is clearly erroneous, that is, if the court is left with a definite and firm impression that a mistake has been made. *State v. Milliorn*, 794 S.W.2d 181, 183 (Mo. banc 1990). The weight and credibility of the witnesses are matters for the trial court's determination. *State v. Burkhardt*, 795 S.W.2d 399, 404 (Mo. banc 1990). We view the facts and the reasonable inferences therefrom in the light most favorable to the trial court's ruling. *State v. Martin*, 79 S.W.3d 912, 915–16 (Mo.App. 2002).

■ The Fourth Amendment to the United States Constitution guarantees the right of all citizens to be free from unreasonable searches and seizures. U.S. Const. amend. IV. "A routine traffic stop based on the violation of state traffic laws is a justifiable seizure under the Fourth Amendment." *State v. Barks*, 128 S.W.3d 513, 516 (Mo. banc 2004). " '[S]o long as the police are doing no more than they are legally permitted and objectively authorized to do, [the resulting stop or] arrest is constitutional.' " *Id.* (quoting *Slavin*, 944 S.W.2d at 317).

■ However, the fact that police may detain a person for a routine traffic stop does not justify indefinite detention. *Id.* "The detention may only last for the time necessary for the officer to conduct a reasonable investigation of the traffic violation...." *Id.* (citing *State v. Woolfolk*, 3 S.W.3d 823, 828 (Mo.App.1999)). A reasonable investigation of a traffic violation may include 1) asking for a driver's license and automobile registration, 2) requesting

the driver to sit in the patrol car, and 3) asking the driver about his destination and purpose. *Barks,* 128 S.W.3d at 517. After the warning was given, the driver and his passengers should have been permitted to go unless Officer Van Mierlo had an objectively reasonable suspicion that the driver or passengers were involved in criminal activity based on specific, articulable facts. *Id.*

In this case the initial traffic stop was completed once the officer gave the warning and returned the driver's license to the driver. *See id.; see also Woolfolk,* 3 S.W.3d at 829. At this point there was no evidence that the officer had developed articulable facts that would have supported detaining the driver for further inquiry. *Barks,* 128 S.W.3d at 517. The answers given to Officer Van Mierlo's determination after the completion of the stop and the suspicions based thereon are "irrelevant to the question of whether specific, articulable facts supported a reasonable suspicion of criminal activity and provided a justification for further questioning once the traffic stop was completed." *Id.* (quoting *Woolfolk,* 3 S.W.3d at 829).

■■■ Defendant next contends that the detention did not turn into a consensual encounter because a reasonable person in the driver's position would not have felt free to leave. A warrantless search is valid if it is made with consent that is freely and voluntarily given. *State v. Faulkner,* 103 S.W.3d 346, 355 (Mo.App. 2003); *State v. Smith,* 966 S.W.2d 1, 7 (Mo.App.1997). Further questioning following the conclusion of a traffic stop is allowed if the encounter has become consensual. *State v. Scott,* 926 S.W.2d 864, 869 (Mo.App.1996); *see also State v. Sullivan,* 49 S.W.3d 800, 815 (Mo.App.2001). " 'So long as the person is free to leave, the officer can talk to him, and is free to ask whether he has contraband on his person, or in his car, or in his residence.' " *Barks,* 128 S.W.3d at 517 (quoting *Woolfolk,* 3 S.W.3d at 830).

■■■ Although no litmus test exists for determining whether continued questioning is consensual or constitutes a seizure of the person questioned, our courts have found guidance in *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497, *reh'g denied,* 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980); *Scott,* 926 S.W.2d at 869. *Mendenhall* held there may be a seizure of the person when there is the "threatening presence" of multiple officers, if the officer displayed a weapon, whether the officer touched the suspect, or if the officer used "language or tone of voice indicating that compliance with the officer's request might be compelled." An officer does not need to inform a suspect that he or she is free to leave the scene in order for the encounter to become consensual. *Scott,* 926 S.W.2d at 870; *see also Ohio v. Robinette,* 519 U.S. 33, 35, 117 S.Ct. 417, 419, 136 L.Ed.2d 347, 352 (1996); *State v. Day,* 87 S.W.3d 51, 56 (Mo.App.2002). However, that option must be apparent from the circumstances. *Barks,* 128 S.W.3d at 517.

■■■ If the person has not been unlawfully seized, an officer may ask for permission to search; if consent is given without coercion, the subsequent search is not prohibited by the Fourth and Fourteenth Amendments. *Woolfolk,* 3 S.W.3d at 831. The state has the burden of showing that consent was freely and voluntarily given. *Sullivan,* 49 S.W.3d at 813. It does not satisfy this burden merely by showing submission to lawful authority. *Woolfolk,* 3 S.W.3d at 831. "Consent is freely and voluntarily given if, considering the totality of all the surrounding circumstances, ... the objective observer would conclude that the person giving consent made a free and unconstrained choice to do so." *Faulkner,*

103 S.W.3d at 355 (quoting *State v. Hyland*, 840 S.W.2d 219, 221 (Mo. banc 1992)). This determination involves a consideration of "a number of factors including, but not limited to, the number of officers present, the degree to which they emphasized their authority, whether weapons were displayed, whether the person was already in custody, whether there was any fraud on the part of the officers, and the evidence of what was said and done by the person consenting." *Sullivan*, 49 S.W.3d at 813 (quoting *State v. Taylor*, 917 S.W.2d 222, 224 (Mo.App.1996)). The officer is not required to tell the suspect he or she can refuse to give consent to search. *Hyland*, 840 S.W.2d at 221; *Woolfolk*, 3 S.W.3d at 831.

The cases on which defendant relies contained evidence of coercion that was not present in this case. In *Barks*, the officer had positioned himself at the driver's side window, was looking down at Barks, and had a lengthy conversation while his emergency lights remained activated. 128 S.W.3d at 516–17. In *Woolfolk*, the driver was repeatedly requested to allow the officer to search the car, the driver originally told the officer he did not want the car searched, and the officer made the request while he had the driver leaning up against the car. 3 S.W.3d at 832. In *State v. Taber*, 73 S.W.3d 699 (Mo.App.2002), defendant was stopped, questioned, and placed in a patrol car. *Id.* at 702–03. Likewise, the driver in *Martin* was placed in the officer's patrol car. 79 S.W.3d at 917. In *State v. Leavitt*, 993 S.W.2d 557, 563 (Mo.App.1999), the driver was "ordered" to show the officer the contents of her car.

■ On the other hand, the evidence in this case supports a finding that the driver's continued conversation with the officer after the completion of the traffic stop was consensual and that the driver freely and voluntarily consented to the search of his automobile. At the time of the questioning, the officer and the driver were standing outside the driver's vehicle, looking at the car. There was no "threatening presence." Although three officers were on the scene, the two additional officers were observing the two passengers, and only Officer Van Mierlo was talking to the driver. *See Sullivan*, 49 S.W.3d at 814. She did not display her weapon[1] or touch the driver. She testified that she did not use coercive language or tone of voice. *See e.g. Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877. There was no evidence that consent was given under fraud or duress. *Day*, 87 S.W.3d at 55–6. The time that elapsed from the stop to the request was approximately six minutes. *See State v. Peterson*, 964 S.W.2d 854, 857 (Mo.App. 1998); *State v. Lord*, 43 S.W.3d 888, 892 (Mo.App. S.D.2001). As in *Lord*, the driver described a "benign, non-coercive exchange" in which the driver "readily volunteered information" and consented to the officer's requests. 43 S.W.3d at 892.

The facts in this case clearly place it within those cases that have affirmed a finding of no illegal seizure or no indicia of coercion. *Day*, 87 S.W.3d at 56; *Sullivan*, 49 S.W.3d at 813; *Scott*, 926 S.W.2d at 869; *Peterson*, 964 S.W.2d at 857; *see also Lord*, 43 S.W.3d at 892 (reversal of order sustaining motion to suppress).

The open bag containing the tank was inside the car. Both it and the tank were in plain view. The seizure of the bag and its contents was within the consent to search given by the driver and not illegal.

---

1. Carrying a holstered weapon is not considered a display of a weapon. *Scott*, 926 S.W.2d at 869.

Defendant last contends that, even if there was no illegal detention leading up to the discovery of the evidence, the search of his own belongings inside the driver's trunk was illegal. Defendant argues that the driver did not have authority to consent to a search of defendant's belongings. We disagree that the search was illegal.

Officer Van Mierlo discovered the canvas bag containing the air tank and aluminum foil in the back seat of the automobile, where defendant had been sitting, and was told that it was defendant's. The driver also told her that defendant had "put more stuff in the trunk." She had probable cause to believe that other drug paraphernalia or illegal substances would be in the bag in the vehicle's trunk. *State v. Lane,* 937 S.W.2d 721, 722 (Mo. banc 1997); *Kovach,* 839 S.W.2d at 312, on which defendant relies, is inapposite.

For all of the above reasons the seizure of the evidence was not illegal nor the result of an illegal detention of defendant. Sufficient evidence in the record before the trial court supports its ruling. The trial court did not clearly err in failing to suppress the two bags seized from the automobile and their contents. Accordingly, defendant's post-arrest statements were not inadmissible as "fruit of the poisonous tree." Point one is denied.

The judgment of the trial court is affirmed.

PATRICIA L. COHEN, P.J. and ROBERT G. DOWD, JR., J., concur.