STATE of Missouri, Respondent,

v.

Gary M. JACKSON, Appellant.

No. WD 65321.

Missouri Court of Appeals,
Western District.

March 28, 2006.

**876**

Irene C. Karns, Columbia, MO, for Appellant.

Shaun J. Mackelprang, Jefferson City, MO, for Respondent.

Before: JAMES M. SMART, P.J., ROBERT G. ULRICH, and LISA WHITE HARDWICK, JJ.

ROBERT G. ULRICH, Judge.

Gary M. Jackson appeals his convictions for possession of a controlled substance, § 195.202, RSMo 2000, and possession of a controlled substance within a county jail, § 221.111, RSMo 2000. He was sentenced respectively to three years imprisonment and a concurrent sentence of one year imprisonment. Mr. Jackson has two points on appeal. First, he argues the trial court erred in overruling his motion to suppress and thereafter admitting evidence of controlled substances found on his person and in his clothing after he was taken into custody. Second, he argues the trial court erred in allowing two police officers to testify that the substance found in a baggie in his clothing was marijuana. Both points are denied, and the judgment of convictions is affirmed.

## Facts

Lafayette County Deputy Sheriff Jerry Poese was patrolling in Lexington, Lafayette County, on the night of January 8, 2004. He was patrolling as part of his additional duties as a road patrol reserve officer for the city of Lexington. He observed a pickup truck turn left onto Main Street without signaling. Deputy Poese decided to stop the truck and, as he advanced closer to the truck, he noticed it did not appear to have a license plate. Deputy Poese activated his emergency lights, and the truck stopped. As Deputy Poese approached the truck, he observed it did have a license plate, but it was covered with dirt. Deputy Poese asked the driver, Mr. Jackson, for his driver's license and proof-of-insurance. Mr. Jackson handed Deputy Poese his license and an insurance card. The license indicated Mr. Jackson lived in Mayview, a town less than ten miles from Lexington. The insurance card had expired, and Mr. Jackson stated he could not find a current proof-of-insurance card.

Deputy Poese instructed Mr. Jackson to keep looking for a current insurance card and took identification from Mr. Jackson and his two passengers. He returned to his patrol car and checked for existing wants or warrants for the three men. Deputy Poese, learning none existed, returned to the pickup truck. Mr. Jackson still had not found a current insurance card and appeared nervous. Deputy Poese asked Mr. Jackson if he had anything illegal in the truck and if he could search the pickup truck. Mr. Jackson stated he felt harassed, but consented to Deputy Poese searching the vehicle.

Deputy Poese opened the door of the truck so Mr. Jackson could exit the vehicle and saw the butt of a rifle. He picked up the rifle, which was not loaded, and asked Mr. Jackson why he was carrying it in his truck. As they were talking, the dispatcher advised Deputy Poese that Mr. Jackson was on probation for assault. Deputy

Poese inquired whether the assault was a felony, and the dispatch stated it was. Deputy Poese then arrested Mr. Jackson for being a felon in possession of a firearm, which he understood to be a violation of federal law and the conditions of Mr. Jackson's probation. Deputy Poese also arrested Mr. Jackson for the traffic violations of failure to signal a turn and failure to have proof-of-insurance. Other than ammunition for the rifle, which was found sitting in a recessed area near the speedometer, there was nothing of interest found during the search of the pickup truck. While en route to the jail, Deputy Poese informed Mr. Jackson that if he had anything illegal in his possession, he should disclose this before entering the jail, as he could face additional charges if anything illegal was found once they arrived at the jail.

When a person is processed for custody, he or she must change into a jail uniform. The inmate's clothing and personal property are inventoried, placed in a paper bag with his or her name written on it, and the bag is placed in the locker facility. While Mr. Jackson was being processed, he suffered a "panic attack" or shortness of breath from a physical condition. An officer provided Mr. Jackson with an inhaler. Mr. Jackson was lying on the floor and appeared to have lost consciousness. An officer observed something in Mr. Jackson's pants pockets and asked Deputy Poese if Mr. Jackson had been patted down for weapons. Deputy Poese replied that he had done a cursory quick pat-down search on the outside of Mr. Jackson's

clothes. Concerned he might have a weapon in his pants pocket, an officer rolled Mr. Jackson over and pulled two Carmex[1] containers from his pocket. The officer discovered one of the containers contained Carmex and the other contained two bags of a substance the officer suspected was methamphetamine. A narcotics officer was contacted and arrived at the jail to field-test the substances. The test indicated the substances were methamphetamine. A Missouri Highway Patrol chemist later determined the substance from both small bags was methamphetamine with a combined weight of 1.74 grams. Due to all of the commotion from Mr. Jackson's apparent panic attack, Mr. Jackson's refusal to change into a jail uniform, and finding methamphetamine on his person, the officer who was booking Mr. Jackson placed Mr. Jackson's belongings into a sack and placed the sack into a locker without searching Mr. Jackson's shirt pockets.

The next morning, Deputy Poese learned Mr. Jackson was on probation for a misdemeanor, not a felony, and, thus, he was not a felon in possession of a firearm.[2] That evening, Mr. Jackson requested a container of lubricant for his glass eye. He indicated the container was located with his property that was confiscated upon his arrival at the jail. Deputy Jared Dillon opened the bag containing Mr. Jackson's clothing and property and smelled marijuana. He found a green leafy substance in a baggie in Mr. Jackson's shirt. Deputy Dillon recognized the substance as marijuana, based on his training and experience. He showed it to Deputy

---

1. Carmex is a brand of lip balm, packaged in a porcelain container with a metal lid.

2. At trial, Deputy Poese testified that he stopped Mr. Jackson for failing to signal and arrested him for the traffic violations. There was no evidence presented to the jury regarding the subsequent search and discovery of

the rifle. This was because the trial judge cautioned both parties just before trial about mentioning Mr. Jackson's arrest for being a felon in possession of a firearm given that Mr. Jackson was not a felon and the arrest for being a felon in possession of a firearm was based on mistaken information.

Harold Schoonover, who also recognized the substance as marijuana based on his experience as a law enforcement officer.

Mr. Jackson was indicted for possession of a controlled substance (methamphetamine), § 195.202,[3] possession of a controlled substance (marijuana) in a county jail, § 221.111, and possession of a weapon in a county jail, § 221.111. Mr. Jackson filed a motion to suppress evidence relating to controlled substances found on his person and in his clothing. His motion contended, *inter alia,* that the detention following the traffic stop extended longer than reasonably necessary to effectuate its initial purpose and the subsequent seizure of Mr. Jackson violated the Fourth Amendment and Article I, Section 15 of the Missouri Constitution. The motion also argued any consent given was not voluntary. The trial court overruled the motion to suppress, and made the following findings on the record:

> The court finds that the original traffic stop by the officer was a lawful stop on viewing the vehicle make a left turn without properly signaling.

> The officer was under the impression there was no license plate on the vehicle. Turned out there was. Section 301.130 requires license plate shall be clearly visible at night.

> The officer testified that it was the policy of the Lexington Police Department where he's a reserve officer that they require persons who do not reside within the city limits of Lexington to post a bond.

> The original stop was lawful. The subsequent investigation was lawful. The motion to suppress is considered, evidence is received, and the motion is denied.

A jury found Mr. Jackson guilty of possessing methamphetamine and possessing marijuana in a county jail. Mr. Jackson was acquitted of the charge of possession of a weapon in a county jail. The jury recommended imprisonment for a term of three years for possession of methamphetamine and one year for possession of marijuana in a county jail. The judge sentenced Mr. Jackson in accordance with the jury recommendation and ordered the terms to be served concurrently.

Mr. Jackson's timely appeal followed.

### Point I

In his first point on appeal, Mr. Jackson argues the trial court erred in overruling his motion to suppress and thereafter admitting evidence of controlled substances found on his person and in his clothing after he was taken into custody. He argues the ruling violated his right to be free from unlawful search and seizure. He claims the evidence should have been excluded as fruit of the poisonous tree because Deputy Poese's lawful seizure ended when he returned to Mr. Jackson's truck after determining no warrants for Mr. Jackson's arrest existed, intending to write a citation or citations, before his request to search the vehicle. Mr. Jackson further asserts that Deputy Poese's request to search the vehicle was not supported by a reasonable suspicion of criminal activity, and his consent was not voluntary considering the totality of the circumstances.

Mr. Jackson's motion to suppress claimed, *inter alia,* that the detention following the traffic stop extended longer than reasonably necessary to effectuate its initial purpose and the subsequent seizure of his person violated the Fourth Amendment and Article I, Section 15 of the Missouri Constitution. It also claimed any

---

**3.** All statutory references are to RSMo 2000 unless otherwise stated.

consent given was not voluntary. The motion was overruled. He also objected at trial to the admission of the controlled substances and a chemist's report identifying them as methamphetamine. These objections were also overruled. Finally, Mr. Jackson included the issue as an allegation of error in his motion for a new trial. Thus, this issue was properly preserved for appellate review.

"In reviewing a trial court's ruling on a motion to suppress, our inquiry is limited to determining whether the decision is supported by substantial evidence." *State v. Dillard*, 158 S.W.3d 291, 297 (Mo. App. S.D.2005). The appellate court determines whether "there is sufficient evidence to support the ruling based on the complete record before the trial court." *State v. Shoults*, 159 S.W.3d 441, 445 (Mo. App. E.D.2005). Both evidence from the pretrial hearing and any additional evidence that may have been presented at trial are considered. *Dillard*, 158 S.W.3d at 297. The evidence is viewed in the light most favorable to the trial court's ruling on the motion to suppress. *Id.* Because of this, only the facts and reasonable inferences drawn therefrom that are favorable to the ruling are considered. *Id.* Contrary evidence and inferences are disregarded. *Id.* Deference is given to the trial court's factual findings and credibility determinations but questions of law are reviewed *de novo*. *Id.* The trial court determines the weight to be given to witness testimony. *Shoults*, 159 S.W.3d at 445. An appellate court will not reverse a trial court's ruling on a motion to suppress unless the decision is clearly erroneous and leaves the appellate court with a definite and firm impression a mistake has been made. *Dillard*, 158 S.W.3d at 297.

The Fourth Amendment to the United States Constitution guarantees all citizens the right to be free from unreasonable searches and seizures. *Id.* The United States Supreme Court has made the Fourth Amendment's guarantee enforceable by the creation of the exclusionary rule of evidence in *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), a protection it extended via the Fourteenth Amendment to defendants in state prosecutions in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The Fourth Amendment to the United States Constitution and Article I, Section 15 of the Missouri Constitution are coextensive. *State v. Richmond*, 133 S.W.3d 576, 579 (Mo.App. S.D.2004). The requirement of reasonableness has been interpreted to mean a search must usually be based on probable cause and executed pursuant to a warrant. *Dillard*, 158 S.W.3d at 297. Warrantless searches are presumptively invalid. *Id.* Therefore, if a search is conducted without a warrant, the search must fall within a recognized exception to the probable cause and warrant requirement to be valid. *Id.*

"[A] routine traffic stop based on the violation of state traffic laws is a justifiable warrantless seizure under the Fourth Amendment." *Id.* As long as the police officer is doing no more than legally permitted and objectively authorized to do, the resulting stop or arrest is constitutional. *Shoults*, 159 S.W.3d at 445. The fact that a police officer may detain a person for a routine traffic stop does not mean an indefinite detention is permissible. *Id.* "The detention may only last for the time necessary for the officer to conduct a reasonable investigation of the traffic violation." *Id.* A reasonable investigation of a traffic violation includes: (1) asking the driver for his or her license and automobile registration; (2) asking the driver to sit in the patrol car; and (3) asking the driver about his or her destination and purpose. *Id.* at 445–46.

Once a reasonable investigation of the traffic stop has occurred [4] and the stop for the traffic violation had ended, the driver and passengers must be permitted to leave unless the officer has an "objectively reasonable suspicion that the driver or passengers were involved in criminal activity based on specific, articulable facts." *Id.* at 446. The conduct and speech of the driver or his or her passengers that occur after the completion of the traffic stop and the police officer's suspicions based thereon are irrelevant to the question of whether specific, articulable facts supported by a reasonable suspicion of criminal activity were present and provided a justification for further questioning once the traffic stop was completed. *Id.* If the detention for the traffic stop "extends beyond the time reasonably necessary to effect its initial purpose, the seizure may lose its lawful character unless a new factual predicate for reasonable suspicion is found during the period of lawful seizure." *Richmond,* 133 S.W.3d at 579.

Mr. Jackson makes four arguments for why the search of his vehicle was unlawful. First, he claims Deputy Poese requested permission to search the vehicle after the traffic stop was completed and without having an objectively reasonable suspicion Mr. Jackson or his passengers were involved in criminal activity based on specific, articulable facts. Second, he claims this is a case where an initially lawful stop has extended beyond the time necessary to perform the investigation of the underlying offense and, as a consequence, the stop lost its lawful character. Third, he claims the request to search was beyond the scope of the stop for a traffic violation. Finally, he claims his consent to the search was not voluntary.

Mr. Jackson's argument on appeal is the search of his vehicle was unlawful for one or more of the four reasons stated. He further claims the illegal search revealed the rifle. Mr. Jackson argues Deputy Poese's intention to arrest him only arose once he believed Mr. Jackson was a felon in possession of a firearm. He adamantly argues he would not have been arrested for the traffic violations alone. He claims he was only arrested because the search revealed the weapon and Deputy Poese was misinformed that he was a felon. Thus, he claims: (1) the search was unlawful; (2) he was only arrested because of the results of the unlawful search; and (3) the methamphetamine and marijuana were only discovered because of the arrest based on the unlawful search. Thus, he claims the methamphetamine and marijuana are the fruits of the unlawful search and should have been suppressed. Notably, Mr. Jackson is not complaining that the procedures whereby the illegal substances were found while he was being processed and held in the Lexington jail violated his rights. His appeal solely concerns the events that occurred after he was stopped by Deputy Poese and remained on the side of the road. Nothing found during the search of the vehicle was used against Mr. Jackson or was the basis for any charges brought against him. Further, as noted in the footnote, *supra,* the jury was never informed a rifle was found in Mr. Jackson's vehicle or that Mr. Jackson was suspected of being a felon in possession of a firearm. If Deputy Poese would have arrested Mr. Jackson based on the traffic violations alone, the search of the vehicle and its lawfulness are irrelevant as the arrest would not have been motivated by the alleged illegal search.

Mr. Jackson begins by disagreeing with the findings made by the trial court for

---

4.   This also includes checking the driver's rec-   ord. *Richmond,* 133 S.W.3d at 579.

overruling the motion to suppress. The trial court overruled the motion after finding Mr. Jackson had committed traffic violations and the stop was lawful, and it was the policy of the Lexington Police Department to require anyone who does not reside in Lexington to post a bond. Mr. Jackson agrees with the trial court that the stop was lawful because Deputy Poese had a reasonable suspicion Mr. Jackson had violated state traffic laws. *Dillard*, 158 S.W.3d at 297. Mr. Jackson also agrees Deputy Poese had the authority to arrest him, regardless of his residence, had he chosen to end the traffic stop in that manner. §§ 303.025; 304.019; 544.216.[5]

Mr. Jackson disagrees, however, with the statement that the policy of the Lexington Police Department was to require anyone who does not reside in Lexington to post a bond when stopped for a traffic violation. He claims Deputy Poese's testimony shows there was no such policy, and the trial court's conclusion is based on Deputy Poese's response to leading questions from the prosecutor and the prosecutor's inaccurate summary of Deputy Poese's testimony. Because Mr. Jackson does not complain on appeal that the form of the prosecutor's questions, namely that they were leading, was error, no significance to Mr. Jackson's observation that the prosecutor asked Deputy Poese leading questions is recognized. Further, Mr. Jackson is not complaining on appeal that the prosecutor's allegedly inaccurate summary was error, and, thus, this court will only consider Deputy Poese's testimony to determine whether substantial evidence supports the trial court's statement that

Deputy Poese "testified that it was the policy of the Lexington Police Department where he's a reserve officer that they require persons who do not reside within the city limits of Lexington to post a bond."

■■■ Deputy Poese testified that taking out-of-town traffic offenders into custody and requiring them to post bond is policy in Lexington, subject to the individual officer exercising discretion as to whether it is enforced after considering the circumstances of each qualifying incident. He also testified he actually intended to arrest Mr. Jackson for the traffic offenses, independent of the weapons charge. The trial court's discretion permits it to believe all, part, or none of any witness's testimony. *Hale v. Hale*, 180 S.W.3d 85, 89 (Mo.App. E.D.2005). "Any conflicts in the evidence regarding the motion to suppress were for the court to resolve...." *State v. Loazia*, 829 S.W.2d 558, 566 (Mo.App. E.D.1992). The trial court chose to believe Deputy Poese's testimony and, implicitly, chose not to believe any contrary testimony. This was not error, and substantial evidence supports the finding that Lexington has a policy of arresting out-of-town traffic offenders and requiring them to post bond.

Mr. Jackson also states that because an officer has discretion under the policy, Deputy Poese was not *required* to arrest Mr. Jackson, and Deputy Poese "in fact did not intend to do so." To the contrary, Deputy Poese explicitly testified he did intend to take Mr. Jackson into custody for the traffic offenses, independent of finding the rifle. Deputy Poese exercised

---

**5.** Section 303.025 requires vehicle owners to maintain financial responsibility on their vehicles and states that violation of the section is a class C misdemeanor. Section 304.019 requires vehicle operators to signal before turning and states that violation of the section

is a class C misdemeanor. Section 544.216 states that an officer may arrest on view, and without a warrant, any person the officer sees violating or has reasonable grounds to believe has violated any law of the State of Missouri, including a misdemeanor offense.

his discretion and chose to effect the policy. Thus, he arrested Mr. Jackson.

This court must view the facts in the light most favorable to trial court's ruling, and the trial court determines whether witnesses are credible. *Dillard,* 158 S.W.3d at 297; *Shoults,* 159 S.W.3d at 445. The record reveals the Lexington Police Department has a policy whereby out-of-town traffic offenders are arrested and required to post a bond. While individual officers are granted discretion to enforce this policy, Deputy Poese testified he intended to arrest Mr. Jackson pursuant to this policy, irrespective of the discovery of the rifle and erroneous belief that Mr. Jackson was a felon in possession of a firearm. Further, Deputy Poese actually arrested Mr. Jackson for the two traffic violations and for being a felon in possession of a firearm, and a $300 bond was required for the traffic offenses. Mr. Jackson does not complain that the procedures whereby he was booked and processed at the county jail or by which his belongings were inventoried and stored are illegal. His sole complaint is that the search led to his arrest, which resulted in the discovery of the contraband. The contraband is the fruit of the illegal search, he claims. Because he would have been arrested, booked, and processed even if he had not been searched and the rifle had not been discovered, the question of whether the search violated Mr. Jackson's constitutional rights is irrelevant.

Moreover, even if Deputy Poese's intention to arrest Mr. Jackson arose only after finding the rifle, the outcome would be the same. An officer's subjective reasons for making an arrest are irrelevant. *Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). Instead, the court determines whether the circumstances, viewed objectively, justify the arrest. *Id.* As conceded by Mr. Jackson, Deputy Poese had statutory authority to arrest Mr. Jackson for the traffic violations alone. §§ 303.025; 304.019; 544.216. Thus, Mr. Jackson's arrest was objectively valid based solely on the traffic offenses, and any alleged illegality pertaining to the search of the vehicle is irrelevant.

Point denied.

## Point II

In his second point on appeal, Mr. Jackson argues the trial court plainly erred in allowing Deputy Dillon and Deputy Schoonover to testify that the substance found in a baggie in his clothing was marijuana. He claims the State failed to lay an adequate foundation to show the officers were sufficiently familiar with marijuana to conclusively identify it. He asserts that admission of the officers' testimony resulted in manifest injustice because without the officers' testimony sufficient evidence to support a finding of guilty on the charge of possession of marijuana does not exist.

At trial, Deputy Dillon testified that Mr. Jackson's shirt and other clothing were placed into a property bag when he was processed into the jail. When Deputy Dillon retrieved lubrication for Mr. Jackson's glass eye he discovered marijuana in Mr. Jackson's shirt pocket. He stated he knew it was marijuana because of the training he had received and his job experience. Deputy Schoonover also testified he identified the substance as marijuana based upon training and experience. Mr. Jackson claims this testimony was not an adequate foundation for the officers to identify the substance as marijuana. Because this claim of error was not presented to the court below, Mr. Jackson seeks plain error review.

Rule 30.20 provides, in pertinent part, "[w]hether briefed or not, plain errors affecting substantial rights may be

considered in the discretion of the court when the court finds that manifest injustice or a miscarriage of justice has resulted therefrom." *State v. January,* 176 S.W.3d 187, 193 (Mo.App. W.D.2005)(quoting Rule 30.20). Plain error review is discretionary and should be granted sparingly. *Id.* "In determining whether to exercise its discretion to provide plain error review, the appellate court looks to determine whether on the face of the appellant's claim substantial grounds exist for believing that the trial court committed clear and obvious error, which resulted in manifest injustice or a miscarriage of justice." *Id.* Plain error is "error that is evident, obvious, and clear, and results in manifest injustice or a miscarriage of justice." *Id.* Plain error review should not be granted unless the error is facially established. *State v. Morrison,* 174 S.W.3d 646, 651 (Mo.App. W.D. 2005).

■■■■■ Mr. Jackson asserts that a plain error review will reveal that the testimony of Deputy Dillon and Deputy Schoonover identifying the substance found in Mr. Jackson's shirt as marijuana should have been excluded because the testimony did not establish a sufficient foundation that the officers were qualified to identify the substance as marijuana. Mr. Jackson further claims that manifest injustice occurred because, without the officers' testimony, the State did not present a submissible case for possession of marijuana. There is a distinction between whether an expert witness's testimony is admissible and whether a submissible case has been made while relying on the expert's testimony. *Washington by Washington v. Barnes Hosp.,* 897 S.W.2d 611, 616 (Mo. banc 1995). If a question exists as to whether an expert witness's opinion testimony is supported by a sufficient factual or scientific foundation, the question is whether the expert witness's testimony is

admissible. *Id.* "It must be raised by a timely objection or motion to strike." *Id.* Once the testimony has been admitted, it may be relied upon for purposes of determining whether a submissible case has been presented. *Id.* The jury decides what probative value, if any, the testimony carries. *Id.*

■■■ "[A]n objection or motion to strike is untimely if it comes too late to give opposing counsel an opportunity to correct any deficiencies in the questions or lay an appropriate foundation for the witness's opinion." *Id.* (quote marks and citation omitted). Any other rule would encourage "sandbagging." *Id.* It would also delay resolution of problems that might be correctable by asking a few questions to further establish foundation, if the opposing counsel was aware that the foundation established would later be alleged insufficient, until such a time where the burden and expense of a new trial would be involved. *Id.*

Plain error is not facially established, and this court declines to exercise its discretion and grant plain error review in this matter. *See State v. Hudson,* 970 S.W.2d 855, 860 (Mo.App. S.D.1998); *State v. Blue,* 875 S.W.2d 632, 633 (Mo.App. E.D. 1994).

Point denied.

### Conclusion

Deputy Poese intended to arrest, had statutory authority to arrest, and actually did arrest Mr. Jackson for traffic offenses. Any claimed illegality in the search of the vehicle is irrelevant as nothing discovered during the search was used to convict Mr. Jackson at trial. Thus, his first point, claiming the vehicle search was unconstitutional, is denied. This court declines to review his second point for plain error

review, and it is also denied. The judgment of convictions is affirmed.

All concur.