**STATE of Missouri, Appellant,**

v.

**Hal J. DIXON, Jr., Respondent.**

No. WD 66641.

Missouri Court of Appeals,
Western District.

March 20, 2007.

Mark L. Williams, Kirksville, MO, for appellant.

Richard Scheibe, St. Charles, MO, for respondent.

Before HOWARD, P.J.,
BRECKENRIDGE and HARDWICK, JJ.

PATRICIA BRECKENRIDGE, Judge.

The State appeals from the order of the trial court sustaining Hal Dixon's motion to suppress. In its sole point on appeal, the State asserts that the trial court erred in sustaining Mr. Dixon's motion to suppress because the encounter between Corporal Eldon Grissom of the Missouri State Highway Patrol and Mr. Dixon was not a seizure under the Fourth Amendment to the United States Constitution and article 1, section 15 of the Missouri Constitution. The State contends that the circumstances surrounding the encounter between Corporal Grissom and Mr. Dixon would have led a reasonable person to believe that he was free to leave and, therefore, the encounter did not constitute a seizure. Because this court finds that the totality of the circumstances surrounding the encounter between Corporal Grissom and Mr. Dixon would have indicated to a reasonable per-

son that he was not free to decline the officer's request or terminate the encounter, the trial court did not err in finding that Mr. Dixon was unlawfully seized. Accordingly, the order of the trial court suppressing the evidence obtained as a result of the unlawful seizure is affirmed.

### Factual and Procedural Background

On the morning of February 18, 2005, at approximately 8:00 a.m., Corporal Eldon Grissom of the Missouri State Highway Patrol was driving southbound on U.S. Highway 63 in Adair County when he observed a red Chevrolet truck parked on the southbound shoulder. As Corporal Grissom pulled up behind the truck, he observed a person sitting behind the wheel. The truck appeared to have broken down. Corporal Grissom, dressed in uniform, stopped his patrol car behind the truck, got out of his vehicle, and approached the truck to see if the individual in the truck needed any assistance. The driver of the truck was Mr. Dixon.

Corporal Grissom asked Mr. Dixon if everything was okay and if he needed any help. Mr. Dixon said, "no," that everything was okay, and that help was on the way. Corporal Grissom acknowledged Mr. Dixon's response and then requested Mr. Dixon's driver's license. Corporal Grissom requested Mr. Dixon's driver's license because he was required to fill out a services rendered report, Form SHP–37. Officers are required to fill out Form SHP–37 upon making any initiation with a driver of a vehicle. The form requires the driver's name, date of birth, gender, and state of driver's license. After Mr. Dixon gave Corporal Grissom his driver's license, Corporal Grissom told Mr. Dixon to stay in his truck because he was going to go back to his vehicle and record the information from his driver's license. Mr. Dixon said,

"okay." Corporal Grissom did not inform Mr. Dixon that he was free to go.

Corporal Grissom returned to his vehicle to record Mr. Dixon's information and run a check on Mr. Dixon's license plates and driver's license to see if Mr. Dixon had any outstanding warrants, which was also required by the highway patrol. The dispatch operator reported that Mr. Dixon did not have any outstanding warrants. Corporal Grissom then returned to Mr. Dixon's truck and handed Mr. Dixon his driver's license. Corporal Grissom again asked Mr. Dixon if he needed anything else from him and Mr. Dixon said that he did not and that help was on the way. Corporal Grissom then returned to his vehicle.

As Corporal Grissom entered his vehicle, he heard the dispatch operator frantically calling him over the radio. The dispatch operator informed Corporal Grissom that Mr. Dixon had a possible active warrant for his arrest in Schuyler County. Corporal Grissom then exited his vehicle and informed Mr. Dixon that there was a possible active warrant for his arrest in Schuyler County. Corporal Grissom instructed Mr. Dixon to exit his truck and come back to his vehicle. While Corporal Grissom and Mr. Dixon were inside Corporal Grissom's vehicle, dispatch confirmed that Mr. Dixon's warrant was active. Corporal Grissom did not immediately arrest Mr. Dixon. Instead, Corporal Grissom and Mr. Dixon discussed Mr. Dixon's warrant and impending arrest.

During this time, Mr. Dixon's help arrived at the scene. Corporal Grissom and Mr. Dixon exited the patrol car and told the individual who had arrived to assist Mr. Dixon that Mr. Dixon was going to be taken into custody. As Corporal Grissom explained to the individual what was going to occur, Mr. Dixon pulled out his wallet and attempted to hand it to the individual.

Corporal Grissom then handcuffed Mr. Dixon and took custody of the wallet. Corporal Grissom searched Mr. Dixon's wallet and found a clear plastic baggy containing a white substance. Lab test results later confirmed that the white substance was methamphetamine.

Mr. Dixon was indicted on one count of the class C felony of possession of a controlled substance in violation of section 195.202, RSMo 2000. Mr. Dixon subsequently filed a motion to suppress evidence, asserting that evidence was obtained as a result of an unlawful seizure of Mr. Dixon's person and driver's license. On November 8, 2005, a hearing was held on Mr. Dixon's motion to suppress, at which Corporal Grissom testified. Thereafter, the trial court granted Mr. Dixon's motion to suppress. The State filed this interlocutory appeal. *See* Section 547.200.1(3), RSMo 2000 (the State may appeal an order or judgment suppressing evidence).

### Standard of Review

■■■ " 'In reviewing a trial court's ruling on a motion to suppress, [this court's] inquiry is limited to determining whether the decision is supported by substantial evidence.' " *State v. Jackson,* 186 S.W.3d 873, 879 (Mo.App. W.D.2006) (citation omitted). "The appellate court determines whether 'there is sufficient evidence to support the ruling based on the complete record before the trial court.' " *Id.* (citation omitted). The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the ruling of the trial court. *Id.* Deference is given to the trial court's factual findings and credibility determinations. *Id.* This court will reverse a trial court's ruling on a motion to suppress only if the decision is clearly erroneous and leaves this court with a

definite and firm impression that a mistake has been made. *Id.*

### No Error in Sustaining Motion to Suppress

■■ In its sole point on appeal, the State asserts that the trial court erred in sustaining Mr. Dixon's motion to suppress because the initial encounter between Corporal Grissom and Mr. Dixon was not a seizure under the Fourth Amendment to the United States Constitution and article 1, section 15 of the Missouri Constitution. The State claims that the circumstances surrounding the encounter between Corporal Grissom and Mr. Dixon would have led a reasonable person to believe that he was free to decline Corporal Grissom's request and terminate the encounter. In particular, the State contends that Corporal Grissom's request for Mr. Dixon's driver's license was not a seizure for purposes of the Fourth Amendment.

■■■ While the Fourth Amendment to the United States Constitution guarantees the right of the people to be free from unreasonable searches and seizures, this court agrees with the State's underlying premise that "not all personal intercourse between policemen and citizens involves 'seizures' of persons." *INS v. Delgado,* 466 U.S. 210, 215, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). For example, "interrogation relating to one's identity or a request for identification by the police does not, *by itself,* constitute a Fourth Amendment seizure." *Id.* at 216, 104 S.Ct. 1758 (citing *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)) (emphasis added). *See also Hiibel v. Sixth Judicial Dist. Court of Nev.,* 542 U.S. 177, 185, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004) ("In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment."). In other words, even when a police officer

has no basis for suspecting an individual, an officer may request identification and examine that identification as long as the officer does not convey a message that compliance with his request is required. *State v. Stacy*, 121 S.W.3d 328, 333 (Mo. App. W.D.2003) (citing *Florida v. Bostick*, 501 U.S. 429, 434–35, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)).

For example, this court has previously held that a request for identification and examination of the identification in the presence of the individual, by itself, does not constitute a seizure. *See id.* at 333 (no seizure when officer examines license in presence of defendant and uses mobile hand-held radio to check for outstanding warrants, since circumstances of request did not communicate to defendant that he was compelled to comply). *See also United States v. Analla*, 975 F.2d 119, 124 (4th Cir.1992) (no seizure when license and registration voluntarily handed over to officer, who kept it a "short time in order to check it with the dispatcher" near where the defendant was standing so that the defendant "was free at this point to request that his license and registration be returned and to leave the scene"). Thus, the State correctly argues that Corporal Grissom's mere request for Mr. Dixon's driver's license and examination of his license does not constitute a seizure.

 Such a conclusion does not end the inquiry, however, because "an initially consensual encounter between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment, 'if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Delgado*, 466 U.S. at 215, 104 S.Ct. 1758 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). When the circumstances of the encounter are such that the person's "freedom of movement was restricted by a factor independent of police conduct," however, the "free to leave" analysis is inapplicable. *Bostick*, 501 U.S. at 436, 111 S.Ct. 2382. "In such a situation, the appropriate inquiry is whether a reasonable person would feel free to decline the officer['s] requests or otherwise terminate the encounter." *Id.*

In *Bostick*, the United States Supreme Court considered whether a seizure occurred when the person's "freedom of movement was restricted by a factor independent of police conduct." 501 U.S. at 436, 111 S.Ct. 2382. The Supreme Court made it clear that, as in cases where the individual has freedom of movement, the determination of whether a seizure occurred must be made on the totality of the circumstances. *Id.* at 437, 111 S.Ct. 2382. The Court specifically rejected the Florida Supreme Court's determination that there was a seizure because that court's determination was based on the single fact that the encounter took place on a bus and Mr. Bostick would not have felt free to leave because he was a passenger on the bus that was scheduled to depart. *Id.* The Court held that "[w]here the encounter takes place is one factor, but it is not the only one." *Id.* "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Id.* (citation omitted). *See also United States v. Weaver*, 282 F.3d 302, 311–12 (4th Cir.2002) (finding no seizure when officer retained driver's license of pedestrian who was traveling by bus and could have walked away from encounter).

 Therefore, in deciding whether an encounter with the police constitutes a sei-

zure, courts are to " 'consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' " *Stacy*, 121 S.W.3d at 332 (quoting *Bostick*, 501 U.S. at 439, 111 S.Ct. 2382). "Although not an exclusive list, factors to consider are ' "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." ' " *Id.* (internal quotation marks and citations omitted).

In this case, Mr. Dixon's car had broken down on the side of the highway and Mr. Dixon was waiting for assistance to arrive. Upon finding Mr. Dixon broken down on the highway, Corporal Grissom stopped his vehicle and asked Mr. Dixon if he needed assistance. After Mr. Dixon declined, Corporal Grissom requested Mr. Dixon's driver's license and took his driver's license back to his vehicle to fill out reports and run a check for warrants. These circumstances alone, however, cannot form the basis for a per se finding that there is a seizure.[1] *See, e.g., United States v. Carpenter*, 462 F.3d 981, 985–86 (8th Cir.2006) (finding that four to five minute retention of driver's license, which officer took to patrol car to run routine records check, does not constitute seizure in absence of "some other 'message' of compulsion"). Rather, as set forth above, the proper analysis is to determine whether, based on the totality of the circumstances, a reasonable person in Mr. Dixon's position would have felt free to decline Corporal Grissom's request or otherwise terminate the encounter.[2] *Bostick*, 501 U.S. at 439, 111 S.Ct. 2382.

Here, Corporal Grissom did not merely request Mr. Dixon's identification and take Mr. Dixon's driver's license back to his vehicle to fill out reports and run a check for warrants. Instead, after requesting Mr. Dixon to produce his driver's license, Corporal Grissom directed Mr. Dixon to remain in his vehicle. Mr. Dixon said,

---

1. Despite recognizing that all of the circumstances surrounding the incident must be considered, there are cases that appear to suggest that an officer's mere retention of a driver's license to conduct a warrants check is a per se seizure. *See e.g., United States v. Lambert*, 46 F.3d 1064, 1068 (10th Cir.1995) ("when law enforcement officials retain an individual's driver's license in the course of questioning him, that individual, as a general rule, will not reasonably feel free to terminate the encounter"); *United States v. Thompson*, 712 F.2d 1356, 1359 (11th Cir.1983) (seizure when officer retained driver's license of suspect because if he "had tried to drive away he could have been arrested for driving without a license"); *State v. Daniel*, 12 S.W.3d 420, 427 (Tenn.2000) (seizure occurred when officer retained the defendant's identification to run computer warrants check because "[a]bandoning one's identification is simply not a practical or realistic option for a reasonable person in modern society"); *State v.*

*Thomas*, 91 Wash.App. 195, 955 P.2d 420, 423 (1998) ("Once an officer retains the suspect's identification or driver's license and takes it with him to conduct a warrants check, a seizure within the meaning of the Fourth Amendment has occurred."). To the extent that these cases suggest that a brief retention of an individual's driver's license is dispositive and it is not necessary to consider the totality of the circumstances, however, they are inconsistent with the United States Supreme Court's directive in *Bostick* and, therefore, this court fails to find them persuasive.

2. *See* 4 WAYNE R. LaFAVE, SEARCH & SEIZURE, section 9.3(a), 103 n. 74 (3d ed. 1996 & Supp.2003) (collecting cases discussing under what circumstances courts have found that the retention of an individual's license or identification does or does not constitute a seizure).

"okay," and did as Corporal Grissom instructed. Corporal Grissom then took Mr. Dixon's driver's license with him back to his patrol car. While in his patrol car, Corporal Grissom recorded Mr. Dixon's information and checked for outstanding warrants.

Moreover, although Corporal Grissom testified that he only asked for Mr. Dixon's license and did not "tell" him, the trial court had the ability to observe Corporal Grissom's testimony and judge his demeanor and credibility, particularly with regard to his tone of voice and manner of speaking when he requested the license and directed Mr. Dixon to remain in his car. Evidence of Corporal Grissom's belief that he was required to fill out Form SHP–37 on each driver with whom he initiates a contact was relevant to Corporal Grissom's demeanor when making the requests. He testified that if he did not complete the form or follow headquarter orders regarding collecting such information that he "could be in trouble." He testified that the policy of the highway patrol also requires him to make a proper computer check for warrants. In fact, he stated that he has followed these required procedures on *every* stop. It was reasonable for the trial court to infer that because Corporal Grissom believed that he was compelled to follow the highway patrol policies, his demeanor when requesting Mr. Dixon's license and instructing him to remain in his vehicle communicated to Mr. Dixon that compliance with the officer's request was, likewise, compelled.

Viewing the evidence in the light most favorable to the trial court's ruling and deferring to the trial court's credibility determinations, this evidence is sufficient to support the trial court's finding that "[a] reasonable person, faced with similar requests and directives from a law enforcement officer under these circumstances,

would have felt compelled to comply ... [and] would have reasonably believed that he was not free" to decline the officer's request and terminate the encounter. Therefore, when Corporal Grissom directed Mr. Dixon to give him his driver's license, directed Mr. Dixon to remain in his vehicle, and then took Mr. Dixon's license back to his patrol car, what initially began as a consensual police encounter was transformed into a seizure. *See also United States v. Lopez*, 443 F.3d 1280, 1285–86 (10th Cir.2006) (seizure occurred when officer approached the defendant in marked patrol car, dressed in uniform, "shined his high-powered spotlight" on the defendant, and instructed the defendant to remain by his vehicle while officer took the defendant's license back to patrol car to run warrants check).

Nevertheless, the State claims that the encounter was not a seizure because it took place on a public highway, Corporal Grissom was the only officer on the scene and never displayed his weapon, and Corporal Grissom had no physical contact with Mr. Dixon. As set forth above, each of these circumstances is a factor to take into consideration when determining whether a seizure has occurred. Nevertheless, these factors are not exclusive and the absence of these factors is not conclusive on the issue of whether an encounter is a seizure. *State v. Taber*, 73 S.W.3d 699, 705 (Mo. App. W.D.2002). Considering the totality of the circumstances, when Corporal Grissom directed Mr. Dixon to give him his driver's license, instructed Mr. Dixon to remain in his truck, retained Mr. Dixon's driver's license, and then took the license back to his patrol car, this court finds that a reasonable person in Mr. Dixon's position would not have felt free to decline Corporal Grissom's request and terminate the encounter. Therefore, substantial evidence supports the trial court's finding that Mr. Dixon was seized.

Finally, the Fourth Amendment requires that all warrantless "seizures" of an individual be founded upon at least reasonable suspicion that the individual seized is engaged in wrongdoing. *Mendenhall*, 446 U.S. at 551, 100 S.Ct. 1870. *See also Delgado*, 466 U.S. at 216–17, 104 S.Ct. 1758 ("Fourth Amendment imposes some minimal level of objective justification to validate the detention or seizure."); *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (reasonableness of detention depends on existence of specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion). This requirement "governs all seizures of the person, 'including seizures that involve only a brief detention short of traditional arrest.'" *Mendenhall*, 446 U.S. at 551, 100 S.Ct. 1870 (citations omitted). In this case, Corporal Grissom "seized" Mr. Dixon before obtaining information that there was an outstanding warrant for Mr. Dixon's arrest. The State concedes that Corporal Grissom did not have reasonable suspicion prior to learning of the outstanding warrant to justify a seizure. Accordingly, the evidence obtained as a result of the illegal seizure must be suppressed as "fruit of the poisonous tree." Thus, the trial court did not clearly err in granting Mr. Dixon's motion to suppress.

The order of the trial court is affirmed.

All concur.