**In re TEXAS FARMERS INSURANCE EXCHANGE, Relator.**

No. 99–0428.

Supreme Court of Texas.

Jan. 27, 2000.

Gregory A. Scott, Russell J. Bowman, Lucy Mason Stella, Frank J. Webb, Dallas, for Relator.

Jesse L. Nickerson, III, Michael D. Mosher, Paris, for Respondent.

Justice HECHT, joined by Justice OWEN, dissenting from the denial of the petition for mandamus.

Remarkably, the court of appeals has held that an attorney who investigates his client's affairs may be required to divulge his communications with his client about the results of that investigation.[1] Even more remarkably, this Court does not think a review of this holding to be worth its while. I respectfully dissent from the denial of the petition for mandamus.

Paul and Treva Chappell claimed benefits under their homeowner's policy, issued by Texas Farmers Insurance Exchange, for the destruction of their home by fire. An investigator hired by Farmers several days later concluded that no accidental-ignition source of the fire could be identified. Shortly after it received the investigator's report, Farmers hired attorney Gregory Scott to conduct examinations under oath—EUOs, as they are referred to—of the Chappels. Scott wrote to the Chappells, advising them that he had been retained by Farmers as legal counsel, and arranged to conduct the examinations. Copies of the examinations were, of course, given to the Chappells and to Farmers. Scott also sent Farmers a confidential report, which began by stating that it was a communication protected by the attorney-

client and work product privileges. Farmers then denied the Chappells' claim, and the Chappells sued Farmers for breach of contract, bad faith, and violations of the Insurance Code and Deceptive Trade Practices Act. Scott does not represent Farmers in the action.

The Chappells noticed Scott's deposition, requesting that he produce all documents relating to the Chappells' claim and their lawsuit. Farmers moved to quash the deposition and for a protective order, and after a hearing, the district court denied the motion. The court's order finds that "Scott was acting as an investigator, not as an attorney," and that Farmers "failed to present sufficient evidence to support its claimed privilege". Farmers filed a motion for rehearing, which the court denied.

Farmers sought mandamus relief in the court of appeals without success. That court explained:

[A]lthough the attorney-client privilege would apply to communications between Scott and Farmers concerning legal strategy, assessments, and conclusions, the privilege does not operate as a blanket privilege covering all of the communications between the two. For instance, the privilege would not apply to those communications concerning bare facts. If we were to so hold, insurance companies could simply hire attorneys as investigators at the beginning of a claim investigation and claim privilege as to all the information gathered. This is not the intent of the privilege. Scott could answer questions in a deposition concerning facts gathered during the course of his investigation while he was acting as an investigator, but could claim the attorney-client privilege if asked to divulge his legal conclusions based upon those facts.

We find that the evidence shows that Scott was acting as an investigator for Farmers and not as an attorney. Such

---

1. *In re Texas Farmers Ins. Exchange,* 990 S.W.2d 337 (Tex.App.—Texarkana 1999).

communications made in that capacity are not privileged.[2]

Needless to say, the court cites no authority for this extraordinary conclusion. The dispositive authority is solidly to the contrary. In *Upjohn Co. v. United States,* the United States Supreme Court held that an attorney's investigation of potential wrongdoing by his corporate client's employees was protected by the attorney-client privilege.[3] The Court held that government prosecutors could seek information from the same sources that corporate counsel had interviewed but could not obtain information directly from counsel.[4] *Upjohn* stands for the unremarkable proposition that factual communications between an attorney and client concerning the attorney's investigation of the client's affairs are, at least as a general rule, privileged.

A party—whether a plaintiff, a defendant, or an insurance company—may retain legal counsel, ask that his claim be investigated, and be assured that the results of counsel's inquiries will be privileged. There may be unusual circumstances when an attorney's investigation reveals facts that should be shared with an opponent, even though they were acquired as part of the attorney's legal representation of his client. For example, an attorney examining the scene of an accident might be required to divulge what he saw if that evidence has since been destroyed. But no special circumstances are cited here, and in no situation should an attorney be required to reveal his communications with his client about a factual investigation. This sole rationale of the court of appeals is simply anti-insurer and overlooks the fact that attorneys in all manner of situations routinely investigate their clients' claims, hire investigators to do the same, and report the results to the clients. The rule the court of appeals has adopted affects not only every lawyer retained to take an EUO, but every plaintiffs' lawyer who investigate a client's claims, and every attorney retained to investigate the internal affairs of a corporation or other group, as in *Upjohn.* The court's holding that the attorney-client privilege "would not apply to ... communications [from an attorney to a client] concerning bare facts" is startling in the breadth of its incursion into the protection of the attorney-client privilege.

This case is deserving of the Court's plenary attention. It affects not only every attorney hired to take an EUO, but every attorney who investigates a client's claim. The parties' counsel have ably presented the issues. An erroneous denial of a privilege may be corrected by mandamus.[5] I would grant the petition.

---

**2.** 990 S.W.2d at 341.

**3.** 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

**4.** *Id.* at 396, 101 S.Ct. 677.

**5.** *Walker v. Packer,* 827 S.W.2d 833, 843 (Tex. 1992).