**STATE of Missouri, Respondent,**

v.

**Chauncey REGOT, Appellant.**

**No. ED 83465.**

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 27, 2005.

William J. O'Herin, St. Louis, MO, for appellant.

Deborah Daniels, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Chauncey Regot ("Defendant") appeals from the trial court's judgment entered in the Circuit Court of St. Charles County upon his conviction by a jury of one count of leaving the scene of a motor vehicle accident, in violation of Section 577.060 RSMo 2000.[1] In his appeal, Defendant contends that the trial court erred in: (1) failing to submit his proposed verdict directing instruction; and (2) sentencing Defendant to nine (9) years when seven (7) years was the maximum sentence for a prior and persistent offender convicted of a Class D felony at the time of sentencing rather than the ten (10) year maximum in effect at the time of the offense. We affirm.

### Statement of the Facts and Proceedings Below

Viewed in the light most favorable to the verdict, the evidence adduced at trial establishes that on November 11, 2002, Defendant and his girlfriend, Rebecca Marvel, drove to the Division of Family Services office (DFS) in St. Charles, Missouri. While Ms. Marvel waited for her appointment, Defendant took her car and drove to a Convenient Mart gas station and bought a soda. As he exited the Convenient Mart, he collided with Lisa Brown and her co-worker, Julie Seymore. Immediately following the collision, Defendant left his car and walked toward Ms. Brown's car. When Defendant reached Ms. Brown, she was sitting on the ground. Although in pain, Ms. Brown remained conscious and engaged in conversation with Defendant. Specifically, Defendant

---

1. All further statutory references are to RSMo (2000) unless otherwise noted.

asked Ms. Brown if she was "okay." Ms. Brown responded that she was not and that Defendant "needed to call somebody." Defendant did not attempt to speak to Ms. Seymore who remained in the car.

After his conversation with Ms. Brown, Defendant initially headed toward the Convenient Mart, but then decided to run back to DFS. Once at DFS, Defendant spoke with his girlfriend and told her about the accident but did not call the police. Nonetheless, police and paramedics arrived at the scene of the accident. Ms. Brown and Ms. Seymore, both of whom were conscious and aware of everything that had occurred, reported to police what had happened and offered a description of Defendant. Thereafter, paramedics transported Ms. Brown and Ms. Seymore to a local hospital.

Shortly after responding to the scene of the accident, Detective Sergeant Michael Akers responded to a call reporting a stolen car from DFS. Upon arriving at DFS, Detective Akers spoke with Rebecca Marvel who reported her maroon 1990 Mercury Sable stolen. Having responded to the earlier accident, Detective Akers was aware both that the Sable had been involved in the earlier accident and that the driver of the Sable left the scene without exchanging information.

While interviewing Ms. Marvel, Detective Akers noticed a man matching the description of the driver who left the scene of the accident injuring Ms. Brown and Ms. Seymore. Detective Akers approached the man who turned out to be Defendant. When questioned by Detective Akers, Defendant stated that he was at DFS with his friend Travis. However, upon further inquiry, Defendant admitted that he had lied and that he fabricated Travis to cover the fact that he was at DFS with Ms. Marvel. Defendant also admitted that Ms. Marvel's Sable had not

been stolen and that he took the car to the Convenient Mart to buy a soda.

Defendant admitted that when pulling out of the Convenient Mart he collided with Ms. Brown's car. Defendant further acknowledged getting out of the Sable and walking over to Ms. Brown. Defendant asserted that, after a brief conversation with Ms. Brown, he became scared and ran back to DFS, contacted Ms. Marvel and told her to call the police and report the car stolen. Defendant admitted that he asked several people at DFS for a ride home because he wanted to get out of the area. As a result of Defendant's admissions, Detective Akers arrested Defendant for leaving the scene of the accident. Detective Akers transported Defendant to the hospital parking lot where Ms. Brown and Ms. Seymore identified Defendant as the man who left the scene of the accident.

The State charged Defendant, as a prior and persistent offender, with leaving the scene of a motor vehicle accident in violation of Section 577.060. At trial, both Ms. Brown and Ms. Seymore testified regarding the accident. In pertinent part, both women stated that they were coherent immediately following the accident and therefore were capable of exchanging names and insurance information with Defendant. Officer Diane Ermeling corroborated Ms. Brown's and Ms. Seymore's testimony and testified that when she responded to the accident, both Ms. Brown and Ms. Seymore were conscious and able to converse.

Defendant testified in his own defense. Specifically, he claimed that after the collision, he walked up to Ms. Brown and said he would "be right back." He admitted to leaving the scene of the accident without giving his name, insurance or contact information but claimed that he did not offer this information because it did not appear that Ms. Brown or Ms. Seymore were capable of taking down any information.

Moreover, Defendant testified that he left the scene to go to DFS to get Ms. Marvel, the owner of the car, and wait for police to respond and return him to the scene of the accident.

At the close of evidence, the jury returned a verdict of guilty. The court sentenced Defendant, as a prior and persistent offender, to nine (9) years in the Missouri Department of Corrections. This appeal followed.

### Discussion

■ In his first point on appeal, Defendant contends that the trial court erred when it submitted verdict directing Instruction Number 5 which: (1) improperly posited that at least one of the injured victims at the scene was not badly injured; and (2) failed to include that Defendant left the scene without exchanging information so that he could get to the nearest police station or judicial officer. In response, the State asserts that the trial court properly submitted Instruction Number 5 because the evidence submitted at trial supported the fact that both Ms. Brown and Ms. Seymore, although injured, remained conscious and capable of receiving Defendant's identification information and that Defendant never left the scene to find the nearest police station or judicial officer.

■ As an initial matter, we note that we will not reverse a decision based on instructional error unless the trial court erred in submitting the instruction and the defendant suffered prejudice as a result. *State v. Westfall*, 75 S.W.3d 278, 280 (Mo. banc 2002). A trial court does not err by refusing to submit an instruction that has no basis in the evidence. *State v. Wilson*, 105 S.W.3d 576, 586 (Mo.App. S.D.2003);

*State v. Hirt*, 16 S.W.3d 628 (Mo.App. W.D.2000). If an instruction is erroneous, we analyze whether there was prejudice by reviewing the facts and the language of the instruction. *State v. Ward*, 745 S.W.2d 666, 670 (Mo. banc 1988). Prejudice results when the instructions are misleading and confusing to the jury. *State v. Green*, 812 S.W.2d 779, 787 (Mo.App. W.D.1991).

■ As a general rule, "[w]henever there is an MAI–CR instruction applicable under the law and Notes on Use, the MAI–CR instruction is to be given to the exclusion of any other instruction." *State v. Ervin*, 835 S.W.2d 905, 922–23 (Mo. banc 1992). There was no dispute that MAI–CR3d 331.10 was the applicable verdict director. Accordingly, the trial court properly based Instruction Number 5 on MAI–CR3d 331.10. The State proposed that the trial court use option 5 in paragraphs Fourth and Fifth.[2] The trial court agreed and Instruction Number 5 (the verdict director) provided as follows:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about December 11, 2002, the defendant operated a motor vehicle on a road traveled by the public at or near Ehlmann in the County of St. Charles, State of Missouri, and

Second, that while so doing the defendant was a party to an accident that caused physical injury to another person, and

Third, that defendant was aware that such physical injury had occurred, and

Fourth, that at the time of the accident or shortly thereafter at least one of the injured persons was present at the scene of the accident and not badly injured, and

Fifth. The paragraph Fifth option must correspond to the paragraph Fourth option.

**2.** MAI–CR3d 331.10 contains eight numbered options for use in paragraphs Fourth and

Fifth, that defendant left the scene of the accident without stopping and giving sufficient information by which the defendant could be readily identified and located to at least one of the injured persons, then you will find the defendant guilty of leaving the scene of a motor vehicle accident.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Physical injury means physical pain, illness, or any impairment or physical condition.

Defendant contends, however, that the trial court should have used the language from option 8 of MAI–CR3d 331.10 rather than option 5 in the Fourth and Fifth paragraphs. Defendant's proposed language was as follows:

Fourth, that at the time of the accident or shortly thereafter no police officer was present at the scene of the accident and **all of the other parties to the accident were badly injured and unable at the scene to receive information from the defendant.**

Fifth, that the defendant left the scene of the accident without stopping and giving sufficient information by which the defendant could be readily identified and located to the nearest police station or judicial officer.

(emphasis added).

Contrary to Defendant's argument, his proposed language for paragraph Fourth has no basis in the evidence, and the trial court did not err in submitting the State's

verdict director. Both Ms. Brown and Ms. Seymore testified at trial regarding the accident. Both women testified that they were coherent immediately following the accident and therefore were capable of exchanging names and insurance information with Defendant. Officer Diane Ermeling, the officer who responded to the scene of the accident, corroborated Ms. Brown and Ms. Seymore's testimony and confirmed that, when she responded, both Ms. Brown and Ms. Seymore were conscious and able to converse.

Defendant testified that neither Ms. Brown nor Ms. Seymore were capable of "taking down" his identification information.[3] However, even Defendant's testimony acknowledged that Ms. Brown, although injured and sitting on the ground, was capable of conversation. To that end, Defendant asked Ms. Brown if she was okay and Ms. Brown responded "no, I'm not, call the police," to which Defendant replied, "okay, ma'am, I'll be right back." Moreover, Defendant's testimony acknowledged that he never even approached Ms. Seymore, the passenger who remained in Ms. Brown's wrecked car, and therefore Defendant could not dispute that Ms. Seymore was capable of receiving his information.

■ Likewise, the record contains no evidentiary support for Defendant's proposed Fifth paragraph and the trial court did not err in submitting the State's verdict director on that basis. Defendant's proposed Fifth paragraph should only have been used if all the other parties to the accident were badly injured and unable to receive information from him.[4] Here, as

---

3. We also note that neither the statute nor the applicable MAI–CR instruction require that the injured person be capable of "taking down" the requisite information.

4. MAI–CR3d 331.10 directs that language used in the Fifth paragraph must correspond to the language used in the Fourth paragraph. Given that there is no basis in the evidence for Defendant's Fourth paragraph, the trial

discussed above, the evidence did not support Defendant's theory that Ms. Brown and/or Ms. Seymore were unable to receive information.

The case of *State v. Hirt*, 16 S.W.3d 628 (Mo.App. W.D.2000) is instructive on this point. In *Hirt*, the defendant also argued that the trial court erred in refusing to substitute option 8 of MAI–CR3d 331.10 for option 5. *Id.* at 631–33. As the Western District noted, "[t]he key portion of the verdict director, contained within both option 5 and option 8 to the Fifth paragraph of MAI–CR3d 331.10, requires that the defendant 'left the scene of the accident without stopping and giving sufficient information.' " *Id.* at 633. Thus, where, as here, the defendant does not give his information to an injured party at the scene or does not go to the nearest police station, "a verdict director without the justification of giving the statutory-required information to the authorities at the nearest police station or judicial officer did not deprive the jury of considering whether [defendant] complied with the statute." *Id.* Accordingly, point one is denied.

■ In his second point on appeal, Defendant asserts that the trial court erred when it sentenced him, as a prior and persistent offender, to nine (9) years imprisonment on a Class D felony. In support of his contention, Defendant relies on Section 1.160 and argues that the maximum sentence for a prior and persistent offender convicted of a Class D felony was seven (7) years at the time of sentencing rather than the ten (10) year maximum in effect at the time of the offense in 2002. In response, the State asserts that Defendant was not entitled to lesser sentence because the statutory section creating the underlying offense, leaving the scene of an accident, was not amended.

Section 1.160 RSMo 2004 provides, in relevant part:

No offense committed and no fine, penalty or forfeiture incurred, or prosecution commenced or pending previous to or at the time when any statutory provision is repealed or amended, shall be affected by the repeal or amendment, but the trial and punishment of all such offenses, and the recovery of the fines, penalties or forfeitures shall be had, in all respects, as if the provision had not been repealed or amended, except: ... [t]hat if the penalty or punishment for any offense is reduced or lessened by any alteration of the law creating the offense prior to the original sentencing, the penalty or punishment shall be assessed according to the amendatory law.

Accordingly, under Section 1.160, "a defendant will be sentenced according to the law in effect at the time the offense was committed unless a lesser punishment is required by a change in the law **creating** the offense itself." *State v. Johnson*, 150 S.W.3d 132, 138 (Mo.App. E.D.2004) (emphasis in the original). Section 577.060 creates the offense of "leaving the scene of a motor vehicle accident" and defines the offense as a Class D felony when, *inter alia*, the accident resulted in physical injury to another party.

When Defendant committed the offense in this case, the range of punishment for a Class D felony was a term of imprisonment not to exceed ten (10) years. Section 558.016 RSMo 2002. However, a statutory amendment to Section 558.016 became effective on July 27, 2003, prior to Defendant's sentencing. This amendment reduced the maximum imprisonment for Class D felonies from ten (10) to seven (7) years. Section 558.016.7(4) RSMo Cum. Supp.2003. Defendant contends that Sec-

court had no basis for using Defendant's pro-          posed Fifth paragraph.

tion 1.160 entitles him to relief because the amendment to Section 558.016 occurred before his original sentencing. We disagree.

Section 1.160 does not entitle Defendant to a reduced sentence because the statutory section creating the offense of "leaving the scene of a motor vehicle accident" was not amended prior to Defendant's sentencing. *See Johnson,* 150 S.W.3d at 138–39. Because the amendment did not apply to **the law creating the offense** of "leaving the scene of a motor vehicle accident" the amendment to the sentencing guidelines set forth in Section 558.016 does not reduce the penalty for Defendant's conviction. Accordingly, Defendant's second point is denied.

### *Conclusion*

The judgment of the trial court is affirmed.

MARY K. HOFF, P.J., and CLIFFORD H. AHRENS, J., Concur.