**STATE of Missouri, Plaintiff/Respondent,**

v.

**Dennis MATHIS, Defendant/Appellant.**

**No. ED 86840.**

Missouri Court of Appeals, Eastern District, Division One.

Sept. 5, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 11, 2006.

Application for Transfer Denied Nov. 21, 2006.

---

Kristina Starke, Public Defender, St. Louis, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Assistant Attorney General, Jefferson City, MO, for Respondent.

OPINION

MARY K. HOFF, Judge.

Dennis Mathis (Defendant) appeals from a judgment of conviction of the sale of unlabeled sound recordings. Defendant alleges the trial court lacked jurisdiction to enter judgment against and to sentence Defendant because: the indictment failed to state an offense; the trial court abused its discretion in sustaining the State's objection and prohibiting Defendant from asking the venire panel members if they understood or could identify the victim in the case; the trial court abused its discretion in refusing Defendant's verdict directing instruction; the trial court clearly erred in denying his motions to suppress evidence and statements; and the trial court plainly erred in denying his motions for judgment of acquittal because the statute under which he was charged is unconstitutionally vague and ambiguous. We affirm.

*Factual and Procedural Background*

Defendant does not challenge the sufficiency of the evidence to support his conviction. Viewed in the light most favorable to the verdict, the evidence adduced at trial reveals the following. On September 28, 2002, at about 5:30 p.m., police officer John Nocchiero (Officer Nocchiero) was on patrol in a marked police car when he drove by a Kentucky Fried Chicken restaurant (KFC). In the parking lot of

the KFC, Officer Nocchiero saw a gold Lincoln Town car with its trunk lid open. Defendant was standing at the back of the car with several other men standing around him, looking into the trunk of the car. As he continued to drive by, Officer Nocchiero saw the front license plate of the car and memorized the license plate number, which he entered into the mobile data terminal of his police car. The record indicated that the license plate had expired in 2001, although the sticker on the plate showed that it was valid until 2003.

Based on this information, Officer Nocchiero drove back to the KFC. There, he observed a man, who had been standing at the back of the car, hand money to Defendant, who then handed the man a compact disc (CD). As Officer Nocchiero slowly drove by, the men noticed his presence, and they all walked to separate cars and drove away. Defendant got in the car, drove off the KFC parking lot, and headed eastbound. Officer Nocchiero, who had been driving westbound, turned his police car around and got behind the car. When Defendant turned northbound, Officer Nocchiero activated the police car's red emergency lights and "curbed" the car.

Officer Nocchiero approached Defendant and told him that he had stopped Defendant because the car had invalid license plates. Officer Nocchiero asked Defendant why his license plates were expired, and Defendant told Officer Nocchiero that he did not have any money because he did not have a job. Upon request, Defendant provided Officer Nocchiero with his driver's license, and Officer Nocchiero told Defendant that he was under arrest for having invalid license plates on the car.

Defendant got out of the car, and Officer Nocchiero advised Defendant of his *Miranda* rights.[1]

Officer Nocchiero then asked Defendant what he was doing on the KFC parking lot, and Defendant replied that he was selling CDs. Officer Nocchiero asked Defendant if the CDs were real or copies, and Defendant did not answer, but he "kind of looked down and rolled his eyes." Officer Nocchiero asked Defendant if he could search the car, and Defendant said that he could.[2] Officer Nocchiero got the keys from the ignition of the car and opened the trunk of the car. Inside the trunk were several large spindles of CDs. Of the total number of CDs found in the trunk, 1,013 had music recorded on them. The tops of the CDs had the names of recording groups written in indelible ink on them. Also inside the trunk was a notebook with the names of various recording artists, a "receipt" book with people's names and the CDs purchased, and a binder with a "price list" for the CDs.

Defendant was charged by indictment with the sale of unlabeled sound recordings, an unclassified felony in violation of Sections 570.240 and 570.241,[3] and punishable upon conviction under Section 570.255. The indictment stated that Defendant "sold or resold, or possessed with purpose to sell or resell sound recordings, which did not contain thereon in clearly readable print, the name and address of the manufacturer, and that these sound recordings consisted of more than one thousand articles in number, and [D]efendant knew or had reasonable grounds to know that the sound recordings did not

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** Subsequently, at the police station after his arrest, Defendant signed a consent to search form.

**3.** All statutory references are to RSMo 2000, unless otherwise indicated.

contain thereon in ... clearly readable print, the name and address of the manufacturer." The case proceeded to a jury trial.

On the same day the trial began, Defendant filed a Motion to Suppress Evidence, specifically, the items seized in the trunk of the car, and a Motion to Suppress Statements, specifically, those statements made by Defendant to Officer Nocchiero during Defendant's arrest. At trial, Defendant objected to the admission of the evidence and the statements, and the trial court met with the attorneys at side bar to take up the motions. Ultimately, the trial court denied both motions. In ruling on the Motion to Suppress Statements, the trial court found that Officer Nocchiero told Defendant about his *Miranda* rights, that Defendant indicated he understood those rights, including his right not to make a statement, that any statements Defendant made after that point were voluntary statements, and that Defendant was not coerced or forced in any way to make statements. In ruling on the Motion to Suppress Evidence, the trial court found the search proceeded from a valid arrest, the search was voluntary in that Defendant gave Officer Nocchiero permission to open the trunk of the car and inspect its contents, and Officer Nocchiero advised Defendant of his *Miranda* rights before he asked Defendant any questions about searching the trunk of the car, and, knowing those rights, Defendant gave permission to search.

During voir dire, defense counsel asked the trial court in a bench discussion if she could ask the venire panel members if they understood or could identify the victim in the case. The prosecutor objected to the proposed question, indicating that the State's position was that the charged crime was not a victimless crime. The trial court

sustained the objection and provided the following reasoning:

[B]y asking that question, we're leading the members of the jury panel in the direction of becoming legislators rather than taking them in the direction of being able to sit as a jury, listen to evidence and decide what the facts are in the case based on the evidence and then apply the facts to the law. I think the question really asks the panel members to think about the policy behind the law and that certainly is an area that's open to discussion in a legislative session or in people sitting around talking about real life and how the law impacts real life. But I don't think it's an issue that will come up for the jury if they follow the role that they're suppose to follow as jurors.... I will let you go back into the area of bootleg CDs and review that and ... ask further questions to develop that. Especially, if—if you think there's some folks on this jury panel who have got some feelings but haven't expressed those feelings yet.

During the instruction conference, Defendant proffered the following verdict directing instruction (Instruction A).

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about September 28, 2002, in the City of St. Louis, State of Missouri, the defendant possessed, sold or resold, or possessed with the purpose to sell or resell, discs on which sounds are recorded;, and

Second, that the number of discs numbered more than one thousand;, and

Third, that he knew or had reasonable grounds to know that the discs had been produced in violation of the provisions of section 570.240, R.S.Mo.

then you will find the defendant guilty of sale of discs produced as unlabeled recordings.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, Section 570.240 states that: The label, cover, box or jacket on all phonograph records, discs, wires, tapes, films, videocassettes or other articles or medium now known or later developed on which sounds or images are recorded shall contain thereon in clearly readable print the name and address of the manufacturer.

The trial court rejected Instruction A and submitted to the jury the following verdict directing instruction (Instruction No. 5), proffered by the State.

If you find and believe from the evidence beyond a reasonable doubt:

First, that on September 28, 2002, in the City of St. Louis, State of Missouri, the defendant possessed, with the purpose to sell, sound recordings which did not contain the name and address of the manufacturer in clearly readable print, and

Second, that these sound recordings consisted of more than one thousand compact discs, and

Third, that the defendant knew or had reasonable grounds to know that these sound recordings did not contain the name and address of the manufacturer in clearly readable print,

then you will find the defendant guilty of the sale of unlabeled recordings.

However, unless you find and believe the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

In deciding which verdict directing instruction to submit to the jury, the trial court stated the following:

I have compared both of the verdict directing Instructions to the three statutory provisions, [Sections 570.240, 570.241, and 570.255]. I believe both Instructions are a good faith effort to give the jury the elements of this charge. I am taking the State's version because I believe it complies with both the letter of the law and the spirit of the Instructions. I'm rejecting Instruction A. I do think that it's carefully drafted and I agree with [defense counsel] that the statute does appear to set out knowledge requirements in connection with this charge of selling unlabeled compact discs. But I think that the State's version of the verdict director provides that element of knowledge or—or as the statute itself says knew or had reasonable grounds to know that these recordings did not contain the name and address of the manufacturer in clearly readable print. [Defense counsel's] verdict directing Instruction would require the jury to read a portion of Section 570.240 and [defense counsel] sets that language out in the Instructions so it's convenient but I think it asks the jury to do something that the jury is not suppose to do. And that is, it asks the jury to interpret the law rather than to decide the facts and then apply those facts to the law. For those reasons, I'm choosing the State's verdict directing Instruction over the Defendant's Instruction.

The jury found Defendant guilty of the sale of unlabeled recordings as submitted in Instruction No. 5 and assessed a punishment of no imprisonment but a fine, in an amount to be determined by the trial court. Defendant filed a motion for judgment of acquittal at the close of the State's evidence and at the close of all the evidence and a motion for a new trial, and the trial court denied all three motions. The trial court entered a judgment in accor-

dance with the jury verdict and sentenced Defendant to a fine in the amount of $2,000, suspended execution of the sentence, and placed Defendant on supervised probation for a period of two years. Defendant appeals from the judgment of conviction.

### Discussion

■ Defendant raises five points on appeal. In his first point, Defendant argues that the trial court lacked jurisdiction to enter judgment against and to sentence Defendant because the indictment failed to state an offense in that the sale of unlabeled CDs is not a crime under Sections 570.240, 570.241, and 570.255.

Section 570.241 provides:

570.241 Sale of articles—violation of labeling requirements

No person shall advertise, or offer for rental, sale, resale, or rent, sell, resell, or cause to be sold, resold, or possess for such purposes any article that has been produced in violation of the provisions of section 570.240, knowing, or having reasonable grounds to know, that the article has been produced in violation of the provisions of section 570.240.

Section 570.240 provides:

570.240 Labeling required

The label, cover, box or jacket on all phonograph records, discs, wires, tapes, films, videocassettes or other articles or medium now known or later developed on which sounds or images are recorded shall contain thereon in clearly readable print the name and address of the manufacturer.[4]

Section 570.255 provides in relevant part:

Section 570.255 Violations, penalties—forfeiture and destruction of unlawful recordings and implements

1. Any person guilty of a violation of sections 570.225 to 570.255 is punishable as follows:

. . .

(2) For any offense of a violation of section 570.240 or 570.241 involving one thousand or more articles upon which motion pictures or audiovisual works are recorded, or any other violation of section 570.225 to 570.241 involving one thousand or more articles, such person is guilty of a felony and, upon conviction, shall be punished by a fine not exceeding fifty thousand dollars, or by imprisonment by the department of corrections for not more than five years, or by both such fine and imprisonment.[5]

■ An indictment shall "state plainly, concisely, and definitely the essential facts constituting the elements of the offense charged, including facts necessary for any enhanced punishment." Rule 23.01(b).[6] The test for the sufficiency of an indictment is whether it contains the essential elements of the offense charged as set out in the statute or statutes that define the offense. *State v. Williams,* 126 S.W.3d 377, 380 (Mo. banc 2004). If a defendant contests the sufficiency of an indictment for the first time after a verdict or judgment, the indictment will be

---

4. As used in Sections 570.225 to 570.255, "manufacturer" means "the person who transfers or causes to be transferred any sounds or images to the particular article, medium, recording or other physical embodiment of such sounds or images then in issue." Section 570.235.

5. In 2005, the legislature amended this section by substituting "hundred" for "thousand." Section 570.255 RSMo Cum.Supp. 2005.

6. All rule references are to Mo. R.Crim. P.2005, unless otherwise indicated.

deemed insufficient only if it is so defective that: (1) it does not by any reasonable construction charge the offense of which the defendant was convicted; or (2) the substantial rights of the defendant to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced. *Id.* A defendant contesting the sufficiency of an indictment for the first time after a verdict or judgment is only entitled to relief if the defendant demonstrates actual prejudice. *Id.* at 381. A defendant suffers actual prejudice if the indictment was either so deficient that the defendant was not placed on notice as to what crime he or she was being charged with or was so lacking in clarity that the defendant was unable to properly prepare a defense. *Id.*

Defendant raises this issue for the first time on appeal. The indictment charged Defendant with violating Sections 570.240 and 570.241, punishable upon conviction under Section 570.255. As set out in Sections 570.240 and 570.241, and as applicable here, the essential elements of the crime with which the indictment charged Defendant are the sale or resale, or possession for such purposes, any article that has been produced without the name and address of the manufacturer contained in clearly readable print on the label, cover, box or jacket of the article, knowing, or having reasonable grounds to know, that the article was produced in such a manner. As set out in Section 570.255, if one thousand or more articles are involved, then such a violation is a felony. The indictment stated that Defendant "sold or resold, or possessed with purpose to sell or resell sound recordings, which did not contain thereon in clearly readable print, the name and address of the manufacturer, and that these sound recordings consisted of more than one thousand articles in number, and [D]efendant knew or had reasonable grounds to know that the sound recordings did not contain thereon in ...

clearly readable print, the name and address of the manufacturer." The indictment was sufficient because it contained the essential elements of Sections 570.240 and 570.241, the offense charged under the indictment, and placed Defendant on notice as to the crime with which he was being charged. Further, Defendant does not argue that he was unable to properly prepare a defense or that he was otherwise prejudiced by the indictment.

Defendant maintains that Section 570.240 does not require the labeling of CDs, but rather, *if* a label is used, then it must include "in clearly readable print the name and address of the manufacturer." We cannot reasonably interpret Section 570.240 in this manner. We find no conditional language in the statute. Rather, we find directive language: "The label ... *shall* contain...." (Emphasis added.) The language indicates that the legislature intended for "all phonograph records, discs, wires, tapes, films, videocassettes or other articles or medium now known or later developed on which sounds or images are recorded" to have a "label, cover, box or jacket" on them that contained "thereon in clearly readable print the name and address of the manufacturer." We also note that Defendant's interpretation tends to make Sections 570.240 and 570.241 meaningless because penalty could be avoided by simply never using a label, cover, box or jacket. Surely the legislature did not intend this result. Accordingly, the trial court had jurisdiction to enter judgment against and to sentence Defendant. Point denied.

█ In his second point on appeal, Defendant argues that the trial court abused its discretion in sustaining the State's objection and prohibiting Defendant from asking the venire panel members if they understood or could identify the victim in

the case because the members who felt that they or their relatives were victims of Defendant's alleged act of selling unlabeled sound recordings would have a bias against Defendant and would have been disqualified under Section 494.470.1 [7] from serving as jurors at Defendant's trial.

■■■ The trial court is vested with wide discretion in the conduct of voir dire, including the appropriateness of specific questions. *State v. Oates,* 12 S.W.3d 307, 310 (Mo. banc 2000). We will find reversible error only where an abuse of discretion is found and the defendant can demonstrate a real probability that he or she was prejudiced by the abuse. *Id.* at 311. The trial court abuses its discretion only if the voir dire permitted does not allow for the discovery of bias, prejudice, or partiality. *State v. Christeson,* 50 S.W.3d 251, 262 (Mo. banc 2001). The trial court may exclude questions that are marginally relevant or irrelevant to issues in the case, or questions that may confuse or mislead the venire panel members. *State v. Armentrout,* 8 S.W.3d 99, 109 (Mo. banc 1999).

The trial court did not abuse its discretion in sustaining the State's objection and prohibiting Defendant from asking the venire panel members if they understood or could identify the victim in the case. The question was irrelevant to the issues in the case and may have misled the venire panel members to instead consider policy issues surrounding the law. The open-ended question also was irrelevant to identifying bias, prejudice, or partiality in any of the venire panel members. Defendant argues that if one of the venire panel members believed that he or she or a family member was a victim of the offense charged then

that venire panel member would be disqualified for cause from serving on the jury. However, defense counsel could have explored this possibility with a more direct line of questioning, e.g., specific involvement in the music industry, such as in the production or sale of sound recordings, by a venire panel member or a family member. Finally, Defendant did not demonstrate a real probability that he was prejudiced by the trial court's ruling. Point denied.

■■■ In his third point on appeal, Defendant argues that the trial court abused its discretion in refusing Instruction A because Instruction No. 5 misinformed the jurors as to the elements of the crime, particularly the mens rea required for the jury to find Defendant guilty of the charged crime.

■■■ We will reverse for instructional error only if the trial court erred in submitting the instruction and the defendant suffered prejudice as a result. *State v. Regot,* 172 S.W.3d 485, 488 (Mo.App. E.D.2005). If an instruction is erroneous, we determine prejudice by reviewing the facts and the language of the instruction. *Id.* Prejudice results when the instruction is misleading and confusing to the jury. *Id.*

No MAI–CR 3d verdict directing instruction was available for the crime charged against Defendant. MAI–CR 3d 304.02 is a generic verdict directing instruction, and its Notes on Use 2 states that the form of MAI–CR 3d 304.02, with appropriate modifications, must be followed when there is no appropriate verdict directing instruction for the crime charged.

---

7. Section 494.470.1 provides in relevant part: [N]o person who has formed or expressed an opinion concerning the matter or any material fact in controversy in any case that may influence the judgment of such person, and no person who is kin ... to the injured party, accused, or prosecuting or circuit attorney in a criminal case within the fourth degree of consanguinity or affinity shall be sworn as a juror in the same cause.

*See also State v. Rawlins,* 932 S.W.2d 449, 452 (Mo.App. W.D.1996). Further, MAI–CR 3d 304.02 Notes on Use 10 states that each verdict directing instruction shall contain all of the essential elements of the offense based upon a careful reading of the appropriate statutes, an examination of the charge against the defendant, and consideration of the evidence. Additionally, if a MAI–CR form must be modified or if there is no applicable MAI–CR form, the modified form or the form not in MAI–CR, if given, shall be "simple, brief, impartial, and free from argument," and it "shall not submit detailed evidentiary facts." Rule 28.02(d).

As set out above, Instruction No. 5 complies with the format of MAI–CR 3d 304.02 and the directives of Rule 28.02(d). Further, the material difference between Instruction A and Instruction No. 5 is that Instruction No. 5 inserts the essential language of Section 570.240 directly into the elements of the offense whereas Instruction A sets out Section 570.240 separately, thereby requiring the jury to take the additional step of interpreting Section 570.240. As stated in Instruction A, "produced in violation of the provisions of section 570.240" is the equivalent of "did not contain the name and address of the manufacturer in clearly readable print," as stated in Instruction No. 5. In other words, to know or have reasonable grounds to know that the CDs were produced "in violation of the provisions of Section 570.240" is to know or have reasonable grounds to know that the CDs "did not contain the name and address of the manufacturer in clearly readable print." Instruction A would have required the jury to construe Section 570.240 on its own in determining the elements of the offense.

Accordingly, the trial court did not err in submitting Instruction No. 5, rather than Instruction A, and Defendant did not suffer prejudice from the submission of

Instruction No. 5 because the instruction did not mislead or confuse the jury. Point denied.

In his fourth point on appeal, Defendant argues that the trial court clearly erred in denying his motions to suppress evidence and statements because Officer Nocchiero's arrest of Defendant was a pretext for an unlawful search and Defendant's consent to search the car was not voluntarily given.

Our review of a trial court's ruling on a motion to suppress is limited to determining whether or not the evidence is sufficient to support the trial court's ruling. *State v. Lewis,* 17 S.W.3d 168, 170 (Mo.App. E.D.2000). We will reverse only if the trial court's ruling is clearly erroneous, that is, if we are left with a definite and firm impression that a mistake has been made. *State v. Whitaker,* 101 S.W.3d 332, 333 (Mo.App. E.D.2003). We view the facts and any reasonable inferences therefrom in the light most favorable to the ruling and disregard any contrary evidence and inferences. *Lewis,* 17 S.W.3d at 170. If the trial court's ruling is plausible in light of the record in its entirety, we may not reverse the ruling even though convinced that, had we been sitting as the trier of fact, we would have weighed the evidence differently. *Id.* We defer to the trial court in its factual findings and determinations of witness credibility, but we review questions of law de novo, including whether or not the trial court's ruling violates the precepts of the Fourth Amendment to the United States Constitution, which protects individuals from unreasonable searches and seizures. *State v. Howes,* 150 S.W.3d 139, 142 (Mo.App. E.D. 2004). Missouri's constitutional protection, Article 1, Section 15, is co-extensive with the protection provided by the Fourth Amendment. *Id.* at 142–143.

Defendant does not challenge the validity of the initial traffic stop and

subsequent arrest based on the invalid license plates on the car. Indeed, a routine traffic stop based on the violation of state traffic laws is a justifiable seizure under the Fourth Amendment. *State v. Shoults*, 159 S.W.3d 441, 445 (Mo.App. E.D.2005). Rather, Defendant argues that Officer Nocchiero's purpose for stopping and arresting Defendant was pretextual. However, a police officer's "intent or motive" for making a routine traffic stop is "unimportant as long as [the officer's] actions were lawful." *State v. Hoyt*, 75 S.W.3d 879, 883 (Mo.App. W.D.2002).

Defendant also argues that Officer Nocchiero's questions to Defendant following his arrest exceeded the scope of the traffic stop and therefore were impermissible. However, Officer Nocchiero advised Defendant of his *Miranda* rights before asking Defendant additional questions. As the trial court stated, any statements Defendant made after that point were voluntary statements, and Defendant was not coerced or forced in any way to make statements.

 Defendant further argues that his consent to search the car was not voluntarily given. As a general rule, searches conducted without a search warrant are unreasonable and violate a defendant's Fourth Amendment rights. *Lewis*, 17 S.W.3d at 170. However, there are exceptions to this general rule, including the consensual search exception. A search conducted pursuant to a valid consent is constitutionally permitted. *Id.* To be valid, consent must be given by someone with authority to do so and must be voluntary. *Id.* Defendant does not argue that he did not have authority to give consent to search the car.

 Consent is freely and voluntarily given if, considering the totality of the circumstances, the objective observer would conclude that the person giving consent made a free and unconstrained choice to do so. *Shoults*, 159 S.W.3d at 446. This determination involves a consideration of a number of factors, including, but not limited to, the number of officers present, the degree to which they emphasized their authority, whether weapons were displayed, whether the person was already in custody, whether there was any fraud on the part of the officers, and the evidence of what was said and done by the person consenting. *Id.* at 447. The officer is not required to tell the person he or she can refuse to give consent to search. *Id.*

Under these circumstances, we conclude that Defendant voluntarily consented to the search of the car. Again, as stated by the trial court, the search proceeded from a valid arrest and occurred after Officer Nocchiero advised Defendant of his *Miranda* rights. Further, Officer Nocchiero was the only officer on the scene, and Defendant was standing outside of the car at the time Officer Nocchiero asked for permission to search the car. The evidence suggests that the encounter and the conversation were brief and that Officer Nocchiero asked Defendant once for permission to search the car. No evidence indicates that Officer Nocchiero displayed a weapon, touched Defendant, or used coercive language or tone of voice. Nonetheless, Defendant maintains that Officer Nocchiero obtained consent by fraud because he told Defendant that he was arresting him for expired license plates while having the goal of searching the car's trunk for contraband. As stated previously, a police officer's "intent or motive" for making a routine traffic stop is "unimportant as long as [the officer's] actions were lawful." *Hoyt*, 75 S.W.3d at 883. Accordingly, the trial court did not clearly err in denying Defendant's motions to suppress evidence and statements. Point denied.

 In his fifth point on appeal, Defendant argues that the trial court plainly

erred in denying his motions for judgment of acquittal because Section 570.241 is unconstitutionally vague and ambiguous in that it fails to give a person of ordinary intelligence fair notice regarding the forbidden conduct.

 Constitutional violations are waived if not raised at the earliest possible opportunity. *State v. William,* 100 S.W.3d 828, 831 (Mo.App. W.D.2003). In the context of a criminal proceeding, Rule 24.04 prescribes the proper time to raise such fundamental questions as the constitutionality of statutes upon which prosecutions are based. *Id.* Rule 24.04(b)(2) provides in relevant part:

> Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver.

Defendant concedes that he raises this claim for the first time on appeal. Because Defendant failed to raise the constitutional challenge to the statute at the earliest possible opportunity, the claim is not preserved for appellate review. Point denied.

### Conclusion

The judgment of conviction of the trial court is affirmed.

CLIFFORD H. AHRENS, P.J., and NANNETTE A. BAKER, J., concur.