**STATE of Missouri, Plaintiff–Respondent,**

v.

**Larry E. WOOD, Defendant–Appellant.**

No. 27372.

Missouri Court of Appeals,
Southern District,
Division Two.

April 4, 2007.

Kent Denzel, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Victor Joseph Melenbrink, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

After a bench trial, Larry E. Wood (Defendant) was convicted of the class C felony of possessing a controlled substance in violation of § 195.202 and sentenced to

seven years imprisonment.[1]   Defendant was found guilty of possessing methamphetamine, which is a class II controlled substance. § 195.017.4(3)(b).   On appeal, Defendant claims the trial court erred in denying a motion to suppress and in admitting evidence that police found a pipe and seven baggies of methamphetamine during a warrantless search of Defendant's person.   Defendant contends this evidence should have been excluded as the poisonous fruit of an illegal seizure and search. The trial court decided that Defendant freely consented to the search during a consensual encounter with police.   Because the trial court's decision is not clearly erroneous, we affirm.

## I.  Standard of Review

■ At a suppression hearing, "[t]he burden of going forward with the evidence and the risk of nonpersuasion shall be upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled." § 542.296.6; *State v. Franklin,* 841 S.W.2d 639, 644 (Mo. banc 1992).   Therefore, the State bore the burden of production and burden of persuasion to show that the warrantless search of Defendant was valid. *State v. Hampton,* 959 S.W.2d 444, 450 (Mo. banc 1997).

■ On appeal, our inquiry is limited to determining whether the trial court's decision to deny the motion to suppress is supported by substantial evidence. *State v. Edwards,* 116 S.W.3d 511, 530 (Mo. banc 2003). "In reviewing the trial court's ruling on the matter, this Court considers the record made at the suppression hearing as well as the evidence introduced at trial." *State v. Deck,* 994 S.W.2d 527, 534 (Mo. banc 1999).   The complete record before the trial court is viewed in a light most favorable to the ruling on the motion to

suppress. *State v. Jackson,* 186 S.W.3d 873, 879 (Mo.App.2006).   Therefore, we consider only those facts, as well as the reasonable inferences derived therefrom, that are favorable to the ruling. *State v. Galazin,* 58 S.W.3d 500, 507 (Mo. banc 2001).   We disregard all contrary evidence and inferences. *State v. Kinkead,* 983 S.W.2d 518, 519 (Mo. banc 1998).

■ We will not reverse the trial court's ruling unless the decision is clearly erroneous, leaving this Court with a definite and firm impression that a mistake has been made. *State v. Williams,* 97 S.W.3d 462, 469 (Mo. banc 2003); *State v. Newberry,* 157 S.W.3d 387, 397–98 (Mo. App.2005).   We review issues of law *de novo.* *State v. Rousan,* 961 S.W.2d 831, 845 (Mo. banc 1998).   We give deference, however, to the trial court's factual findings and credibility determinations. *Id.* For this reason, "[t]he trial court may not be reversed if its decision is plausible, even if we are convinced that we would have weighed the evidence differently if sitting as the trier of fact." *State v. Davalos,* 128 S.W.3d 143, 147 (Mo.App.2004).   The evidence and inferences contained in the complete trial record, viewed in the light most favorable to the trial court's ruling on the motion to suppress, are summarized below.

## II.  Factual and Procedural Background

On the night of July 27, 2003, Springfield police officer Harold Millirons (Millirons) was on patrol in the northeast part of the city.   This was Millirons' assigned patrol area, and a large amount of drug activity took place there.   At approximately 9:55 p.m., Millirons received a call on his radio concerning a vehicle that had failed to stop for another officer attempting to

1. All references to statutes are to RSMo   (2000).

initiate a traffic stop. Millirons responded to the call so he could serve as backup.

At 10:00 p.m., Millirons arrived at a used car lot located at 928 E. Kearney. The pursued vehicle was stopped on the lot. Fellow Springfield police officer Gordon (Gordon) was standing beside the driver's side window of the stopped vehicle, talking to the driver. In addition to Millirons, two other officers had arrived at the car lot to assist Gordon. The car lot was closed, and the lights were off. Defendant was sitting on the front steps of the lot's business office. He was looking at Gordon, who was about 10 to 20 feet away. Millirons became concerned that Defendant had been a passenger in the stopped vehicle whom Gordon had not seen or that Defendant might pose a threat to the safety of the officers on the scene.

Millirons walked over so he could ask Defendant who he was and why he was sitting in the parking lot of a closed business. None of the other officers were involved in the encounter. As Millirons approached, he observed that Defendant was wearing a t-shirt and sweat pants with the legs pulled up to his knees, so that he appeared to be wearing shorts. Defendant was very nervous, very fidgety, "animated," sweating profusely and moving his hands around. Based on Millirons' experience, Defendant's behavior was consistent with methamphetamine use.

Millirons asked Defendant for his identification. He had none, but he did voluntarily provide his name, date of birth and social security number. When Millirons asked what Defendant was doing at the lot, he responded that he was a part-time mechanic there. He was waiting for his boss, who was the driver of the vehicle that had been stopped. Millirons was concerned about his own safety, so he asked Defendant if he had any weapons or drugs on him. At that point, Defendant was not in custody. Millirons' gun was holstered, and he was not threatening or coercing Defendant in any way. Defendant said he had no weapons or drugs. Millirons then asked, "Would you mind if I search you for weapons or drugs?" Defendant answered by saying, "Sure." [2]

At Millirons' request, Defendant stood up. When Millirons initiated the search Defendant did not pull away or look confused. Moreover, Defendant did not verbally protest that he had not given consent or tell Millirons to halt the search. Instead, Defendant was "totally cooperative" the whole time. There was nothing about Defendant's statements, body language or demeanor which suggested to Millirons that Defendant "didn't want to be searched."

Millirons began searching Defendant's left pant leg and felt a couple of objects. Defendant said it was a package of cigarettes and a lighter. He voluntarily removed these items from his pants, handed them to Millirons and said, "that was it." When Millirons felt Defendant's right pant leg, though, the officer felt a small, hollow metal pipe. From past experience, Millirons immediately recognized the pipe as drug paraphernalia. When Millirons asked Defendant what it was, he said he didn't know. Defendant was placed in handcuffs so Millirons could safely retrieve the item. He removed the pipe and a wallet from Defendant's pants. Upon examination of the pipe, Millirons observed

---

**2.** At the suppression hearing, Millirons testified that he "took that as [Defendant's] consent that it was okay to search him. If he would have given me any other indication, I wouldn't have searched him.... I felt that he was giving full consent to a search." Defendant, on the other hand, testified that he did not consent to the search because he intended his response to mean, "Sure I would mind."

that it was blackened and had a little bit of powdery residue on it. Millirons asked what was in the wallet because, in his experience, people sometimes kept controlled substances in such an item. Defendant said, "I guess you should open it and find out." Millirons did so and found seven individually wrapped packages of a tan powder that looked like methamphetamine.[3] Defendant was arrested for possession of a controlled substance.

In August 2004, Defendant was charged by felony information with committing the class B felony of possession of a controlled substance with intent to distribute in violation of § 195.211. Subsequently, Defendant filed separate motions to suppress the pipe and methamphetamine that were seized by Millirons, as well as the statements Defendant made to the police, based on the Fourth and Fourteenth Amendments to the United States Constitution and art. I, § 10 and § 15 of the Missouri Constitution. Defendant contended the aforementioned evidence should be suppressed, pursuant to these constitutional provisions, because Millirons did not have reasonable suspicion to question him and Defendant did not voluntarily consent to the search.

In January 2005, the trial court conducted a hearing on the motions to suppress and received testimony on these issues from both Millirons and Defendant. After considering the evidence, the court concluded that: (1) the encounter between Millirons and Defendant was consensual; (2) Defendant freely consented to the search; and (3) "[i]f there was some miscommunication, the Court has not heard any evidence that there was any protest or any attempt to clarify that by Defendant."

After Defendant waived his right to a jury, a bench trial was conducted. The constitutional issues raised in the motions to suppress were properly preserved for review via appropriate evidentiary objections at trial. Defendant was acquitted of possession of methamphetamine with intent to deliver in violation of § 195.211. The class C felony of possession of methamphetamine in violation of § 195.202, however, is a lesser-included offense of the principal charge. *See State v. Neher*, 213 S.W.3d 44, 48 (Mo. banc 2007). The trial court convicted Defendant of the lesser offense, and this appeal followed.

## III. Discussion and Decision

In Defendant's sole point on appeal, he claims the trial court erred in denying his motions to suppress and admitting in evidence the pipe, the methamphetamine and Millirons' testimony concerning how he discovered these items. Defendant contends this evidence was the fruit of an illegal seizure and search for two reasons. First, Defendant argues that Millirons seized Defendant by questioning him without telling him he was free to leave and that the officer did not have reasonable suspicion of criminal activity to support the seizure. Second, Defendant argues that the search was not consensual because his statement, "Sure," meant he did not consent to being searched. We will examine each argument in turn.

### *Was Defendant Seized When He Was Questioned by Officer Millirons?*

■ The Fourth Amendment to the United States Constitution guarantees all citizens the right to be free from unreasonable searches and seizures. *State v. Barks*, 128 S.W.3d 513, 516 (Mo. banc 2004). This guarantee is enforced through

---

**3.** Later laboratory analysis confirmed that the seven packages contained 2.3 grams of methamphetamine.

the exclusionary rule, which is a rule of evidence first created in *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). *See State v. Jackson,* 186 S.W.3d 873, 879 (Mo.App.2006). In *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the protection of this exclusionary rule was extended, through the Fourteenth Amendment, to defendants in state prosecutions. *Jackson,* 186 S.W.3d at 879.

The requirement that searches and seizures be reasonable has been interpreted to mean that a search usually must be based on probable cause and executed pursuant to a warrant. *State v. Dillard,* 158 S.W.3d 291, 297 (Mo.App.2005); *State v. Gantt,* 87 S.W.3d 330, 332 (Mo.App. 2002). Thus, warrantless searches are presumptively invalid. *State v. Galazin,* 58 S.W.3d 500, 505 (Mo. banc 2001). In order to be valid, a warrantless search must fall within one of the recognized exceptions to the probable cause and warrant requirements to be valid. *Dillard,* 158 S.W.3d at 297; *Gantt,* 87 S.W.3d at 333.

Defendant's first argument is that he was illegally seized, in violation of the Fourth Amendment of the United States Constitution and art. I, § 15 of the Missouri Constitution, when he was questioned by Millirons.[4] Defendant posits such questioning was unconstitutional because Millirons did not tell Defendant that he was free to leave, and the officer did not have reasonable suspicion of criminal activity to support the seizure. We disagree.

Not all personal intercourse between a police officer and an individual involves a seizure that is subject to Fourth Amendment protection. *State v. Rowe,* 67

S.W.3d 649, 654 (Mo.App.2002). "Where a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and not a seizure that requires a reasonable suspicion of criminal activity to detain the person." *Id.* at 655. As our Supreme Court explained in *State v. Granado,* 148 S.W.3d 309 (Mo. banc 2004):

> So long as the person is free to leave, the officer can talk to him and is free to ask whether he has contraband on his person, or in his car, or in his residence.... A court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.

*Id.* at 312 (citations omitted). Factors that may indicate there was a seizure include: (1) the threatening presence of multiple officers; (2) whether the officer displayed a weapon; (3) whether the officer touched or physically restrained the suspect; or (4) whether the language or tone of voice used by the officer indicated that compliance with the officer's request might be compelled. *State v. Shoults,* 159 S.W.3d 441, 446 (Mo.App.2005); *Rowe,* 67 S.W.3d at 655; *State v. Faulkner,* 103 S.W.3d 346, 355 n. 7 (Mo.App.2003).

Defendant asserts that he was seized because he was alone in the parking lot with several officers present, and he was questioned without being told he could refuse to answer and leave anytime. Neither assertion is persuasive. While it is true that several officers arrived at the scene to assist Gordon, no one except Millirons interacted with Defendant. Millirons never displayed his weapon during

---

**4.** The protection provided to Missouri citizens by art. I, § 15 is coextensive with that provided by the Fourth Amendment of the United States Constitution. *State v. Rushing,* 935 S.W.2d 30, 34 (Mo. banc 1996); *State v. Richmond,* 133 S.W.3d 576, 579 (Mo.App.2004).

the encounter. Prior to initiating the search, Millirons did not physically touch Defendant. He was handcuffed only after Millirons felt the metal pipe, which he immediately recognized as drug paraphernalia. At that point, Millirons had probable cause to arrest Defendant. *See State v. Vanacker,* 759 S.W.2d 391, 394 (Mo. App.1988). According to Millirons, he did not threaten or coerce Defendant to make him answer questions. In our view, the language used by Millirons in questioning Defendant would not indicate to a reasonable person that compliance with the officer's requests might be compelled. Finally, it is well settled an officer is not required to inform a citizen that he or she is free to leave or refuse to respond to questions before the encounter can be deemed consensual. *Shoults,* 159 S.W.3d at 446–47; *State v. Day,* 87 S.W.3d 51, 56 (Mo.App.2002); *Rowe,* 67 S.W.3d at 655–56; *State v. Scott,* 926 S.W.2d 864, 870 (Mo.App.1996).

■ In sum, the trial court concluded that the encounter between Defendant and Millirons was consensual. Based on our review of the complete record before us, there is substantial evidence to support that decision. "Consensual communications between an officer and a citizen involving no coercion or restraint of liberty do not constitute seizures, and thus do not invoke Fourth Amendment protection." *State v. Faulkner,* 103 S.W.3d 346, 355 (Mo.App.2003) (footnote omitted). As Defendant was not seized when he was questioned by Millirons, Defendant's first argument has no merit.

### *Did Defendant Consent to Being Searched by Officer Millirons?*

■ Defendant's second argument is that, even if he was not seized, the search of his person still violated the Fourth Amendment of the United States Constitution and art. I, § 15 of the Missouri Constitution because he did not consent to being searched by Millirons. A search that is conducted pursuant to valid consent is one of the recognized exceptions to the warrant requirement. *Faulkner,* 103 S.W.3d at 355. The State bears the burden of showing that consent was freely and voluntarily given. *Id.* Defendant points out that Millirons asked, "Would you mind if I search you for weapons or drugs?" Defendant argues that his answer, "Sure," should be interpreted literally to mean that he *did* mind being searched and, therefore, did not give consent. Once again, we disagree.

■ Consent is freely and voluntarily given if, considering the totality of all the surrounding circumstances, an objective observer would conclude that the person giving consent made a free and unconstrained choice to do so. *State v. Hyland,* 840 S.W.2d 219, 221 (Mo. banc 1992). The trial court interpreted Millirons' question as asking for Defendant's consent to search his person, to which he gave an affirmative response. We believe an objective observer could reasonably have interpreted the question and answer in this fashion. *See, e.g., State v. Sanad,* 769 S.W.2d 436, 439 (Mo.App.1989) (the defendant was asked whether he minded if the officer looked through defendant's vehicle; defendant "willingly consented" by replying, "Sure. Go right ahead"). More importantly, the trial court could also consider Defendant's nonverbal actions in deciding whether he freely consented to the search. *Hyland,* 840 S.W.2d at 222; *State v. Harp,* 101 S.W.3d 367, 373–74 (Mo.App.2003); *State v. Peterson,* 964 S.W.2d 854, 857–58 (Mo.App.1998). Based on the evidence before the trial court, Defendant's nonverbal behavior at the scene was inconsistent with his subjective, *post hoc* testimony at the suppression hearing that he did not intend

to give consent. When Millirons began searching, Defendant did not pull away or appear confused. He did not say that he had not consented or tell Millirons to stop the search. According to Millirons, Defendant was "totally cooperative" throughout the entire search. For example, when Millirons felt objects in Defendant's left pant leg, he explained what they were, voluntarily removed them and handed them to Millirons. Nothing about Defendant's statements, body language or demeanor suggested to Millirons that Defendant "didn't want to be searched." Considering the totality of the surrounding circumstances, there was substantial evidence to support the trial court's decision that Defendant freely and voluntarily consented to the search. Defendant's second argument has no merit.

In conclusion, there is substantial evidence in the complete record before us to support the trial court's decision to deny the motions to suppress and admit the challenged evidence at trial is not clearly erroneous. The judgment of the trial court is affirmed.

BARNEY and LYNCH, JJ., Concur.