**STATE of Missouri, Plaintiff–Respondent,**

v.

**Lawrence M. BREESE, Defendant–Appellant.**

**No. 27858.**

Missouri Court of Appeals,
Southern District,
Division Two.

March 14, 2008.

Rehearing Denied April 2, 2008.

Application for Transfer Denied
May 20, 2008.

---

Nancy A. McKerrow of Columbia MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Linda Lemke, Assistant Attorney General of Jefferson City MO, for Respondent.

DON E. BURRELL, Judge.

Lawrence Breese (Defendant) appeals from his conviction for possession of a controlled substance, a violation of Section 195.202.[1] In the summer of 2006, Defendant was convicted of one count of possession of a controlled substance and sentenced as a prior and persistent offender to a term of ten years. On appeal, Defendant challenges 1) the sufficiency of the evidence to support the conviction; and 2) the trial court's overruling of his motion to suppress certain evidence and in allowing it to be admitted at trial. We affirm.

### Facts

On March 21, 2005, Deputy Carmello Crivello (Deputy Crivello) of the Phelps County Sheriff's Department was nearing the end of his shift and was on Interstate 44 working his way toward home. While traveling in the right-hand lane, Deputy Crivello was passed by a black Ford Thunderbird with a California license plate traveling at a high rate of speed. After pacing the Thunderbird for some distance, Deputy Crivello determined that the vehicle was traveling at least eighty miles per hour-ten miles per hour over the posted speed limit. Deputy Crivello activated his emergency lights in an attempt to get the vehicle to pull over. The Thunderbird initially slowed and pulled to the shoulder, but then began to increase its speed. At that point, Deputy Crivello also accelerated and activated his emergency sirens. After he activated his sirens, the vehicle did come to a stop on the shoulder of the highway.

Deputy Crivello knew the driver of the vehicle to be Tanya Johnson (Johnson) and also recognized Defendant who was sitting in the front-passenger seat. A male juvenile, who Deputy Crivello did not know, was sitting in the rear seat of the vehicle. According to Deputy Crivello, both Johnson and Defendant exhibited signs of "tweaking," a condition he testified indicates "someone is high on methamphetamine and they're at a peak and they've been using some up to days" and have been without any sleep. Deputy Crivello stated that when a person is "tweaking" he cannot completely control his body or mouth movements. Deputy Crivello testified that both Johnson and Defendant ex-

---

1. Unless otherwise noted, all references to statutes are to RSMo (2000).

hibited a heavy amount of teeth grinding and mouth movement as if they were chewing a large amount of bubble gum.

Deputy Crivello asked Johnson to come back to the patrol car and she did so. While Deputy Crivello was speaking to Johnson in the patrol car, Defendant exited the Thunderbird and started pacing back and forth by the side of the vehicle while talking on a cell phone. Deputy Crivello left Johnson in the patrol car and asked Defendant to get off the phone[2] and get back in the Thunderbird.

Defendant hung up the cell phone and Deputy Crivello asked him if he had any methamphetamine. Defendant told Deputy Crivello that he did not. Deputy Crivello then told Defendant that he knew Defendant was high. Defendant responded by saying, "I know, I love this shit, but I, I'm not selling any. I ain't got no money, I'm not selling it." At this point, Deputy Crivello returned to his patrol car to resume speaking with Johnson but was interrupted because Defendant had opened the door of the Thunderbird and was again using the cell phone. Deputy Crivello approached Defendant again and ordered him for the second time to get off the cell phone or he would be arrested. Defendant again hung up the phone at that point. Deputy Crivello returned to his patrol car and asked Johnson for consent to search the vehicle. Johnson gave him permission to do so. Deputy Crivello approached the Thunderbird and asked Defendant to exit the vehicle so he could

search it. At that point, Defendant stated he was not going to allow Deputy Crivello to search the vehicle. Deputy Crivello responded that Defendant was not the owner of the vehicle and that he had obtained the driver's consent to conduct the search.

A black shower bag was on the floor in front of the front passenger seat—the seat Defendant occupied. Deputy Crivello opened the shower bag and found inside men's toiletries and a black, plastic container. Deputy Crivello shook the container and heard scales inside. He then opened the plastic container and inside was a scale and bowl with a white powdery substance on them that he believed to be drug residue.[3] At no time while Deputy Crivello was going through the shower bag and its contents did Defendant ever claim to be the owner of the bag or in any way indicate that Deputy Crivello should not be searching it. Deputy Crivello conducted a field test on the scale which indicated a positive response for methamphetamine. After he had searched the bag and conducted his field test on the scale, Deputy Crivello asked Defendant who owned the bag and scale. Defendant initially denied that the bag and its contents were his, then admitted they were, and then finally claimed that his sister had packed the bag.

The scale was later sent to the Missouri State Highway Patrol crime lab for additional testing. The lab analyst who conducted the test testified that methamphet-

---

**2.** Deputy Crivello testified that people running drugs on Interstate 44 often employ a second vehicle to act as an escort for the vehicle containing the narcotics. The people in the escort vehicle have the job of making sure the drugs in the escorted vehicle reach their destination "at any cost." Deputy Crivello testified that, after a particularly dangerous incident where an escort vehicle had almost run into him, he stopped allowing the use of cell phones during traffic stops. Pre-

venting any communication between any two such vehicles is a legitimate officer safety concern and supports Deputy Crivello's reasonable demand that Defendant not use his cell phone.

**3.** It is unclear from the testimony at trial whether the bowl was part of the scale itself or was a separate item. We will hereafter refer to both items simply as "the scale."

amine is soluble in water. In conducting his test, the lab analyst rinsed the scale with water then tested the water for the presence of methamphetamine. The test indicated that the water contained methamphetamine. The analyst testified he had to use the water because there was not quite enough of the substance present on the scale for him to scrape out, weigh, and test by itself.

A jury found Defendant guilty of possession of methamphetamine, a controlled substance. For ease of analysis, we review Defendant's points on appeal in reverse order.

### Search of the Vehicle

For his second point on appeal, Defendant argues that the trial court erred in overruling his motion to suppress and thereafter admitting at trial the evidence derived from Deputy Crivello's search of the vehicle. Defendant claims it was unreasonable for Deputy Crivello to believe that Johnson had authority to consent to a search of the car when a juvenile with the same last name as the registered owner of the vehicle was also in the car.[4] Because he believes Johnson lacked authority to consent to the search of the vehicle, Defendant reasons that the search was unconstitutional because Deputy Crivello lacked probable cause to search the vehicle.

We review a trial court's ruling on a motion to suppress in the light most favorable to the ruling and defer to the trial court's determinations of credibility. *State v. Granado*, 148 S.W.3d 309, 311 (Mo. banc 2004). Our review of the ruling is limited to determining whether it was supported by sufficient evidence and we will reverse only if we find it to be clearly erroneous. *State v. Edwards*, 116 S.W.3d 511, 530 (Mo. banc 2003). In determining whether or not sufficient evidence has been presented, we review evidence adduced at the hearing on the motion to suppress as well as evidence adduced at trial. *State v. Gonzalez*, 235 S.W.3d 20, 23 (Mo.App. S.D.2007).

Under the Fourth and Fourteenth Amendments to the United States Constitution, citizens are protected from "unreasonable searches and seizures" by state officers. *Mapp v. Ohio*, 367 U.S. 643, 654–55, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Additionally, Article I, Section 15 of the Missouri Constitution is coextensive with the Fourth Amendment. *State v. Jackson*, 186 S.W.3d 873, 879 (Mo.App. W.D.2006).

Searches or seizures conducted without a warrant are presumptively invalid. *Id.* In order for a court to uphold a search made without a warrant, the search must have fallen within one of the recognized exceptions to the warrant requirement. *Id.* In determining whether or not an exception applies to the search at hand, we consider what the officer had reason to believe at the time of his search. *State v. Childress*, 828 S.W.2d 935, 944 (Mo.App. S.D.1992).

Routine traffic stops for violation of a traffic law are justifiable seizures under the Fourth Amendment. *Jackson*, 186 S.W.3d at 879. Additionally, consent is one of the recognized exceptions to the warrant rule. *State v. Wood*, 218 S.W.3d 596, 603 (Mo.App. S.D.2007).

---

4. When Deputy Crivello first took Johnson back to his patrol car, he ran the Thunderbird's license plate and was informed that the vehicle was registered to someone in California with the same last name as the juvenile. The juvenile testified at the PCR hearing that the car was a gift to him from his father but that it was probably titled in his father's name.

In the case at bar, Deputy Crivello testified that he pulled Johnson over for exceeding the speed limit and asked for her consent to search the vehicle. Johnson consented to the search. Defendant does not challenge the finding that Johnson consented to the search but claims that Johnson lacked the authority to grant such consent and that it was unreasonable for Deputy Crivello to believe that Johnson had such authority. The State argues that Defendant does not have standing to contest the search of the vehicle.

■■■■ "[C]apacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded space." *State v. Lane,* 937 S.W.2d 721, 722 (Mo. banc 1997) (quoting *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). The mere status of being a passenger in a vehicle does not accord a legitimate expectation of privacy in the vehicle that would entitle the passenger to challenge a search of it. *State v. Shoults,* 159 S.W.3d 441, 445 (Mo.App. E.D.2005). Because Defendant had no reasonable expectation of privacy in the vehicle, he cannot now contest whether it was reasonable for Deputy Crivello to rely on Johnson's consent to search the vehicle. More specifically, however, Defendant seeks suppression of evidence discovered while Deputy Crivello was searching Defendant's shower bag. A passenger does have a legitimate expectation of privacy in his personal luggage even when that luggage is placed in another person's vehicle. *Lane,* 937 S.W.2d at 722. However, a person who disclaims ownership of an item at the time of the search cannot later claim an expectation of privacy in it. *State v. Toolen,* 945 S.W.2d 629, 632–33 (Mo.App. E.D.1997); *State v. Pruett,* 425 S.W.2d

116, 120 (Mo.1968); *State v. Cantrell,* 310 S.W.2d 866, 870 (Mo.1958).

■■■■ Even if Defendant had preserved his right to claim an expectation of privacy in the shower bag by not denying his ownership of it to Deputy Crivello, no constitutional violation occurred when Deputy Crivello conducted his search. Under the "automobile exception" to the warrant requirement, a warrant is not required if probable cause exists to search a vehicle. *California v. Acevedo,* 500 U.S. 565, 579, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). "The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *Id.* at 580, 111 S.Ct. 1982. The scope of the search of the vehicle is "defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Id.* at 579–80, 111 S.Ct. 1982 (quoting *U.S. v. Ross,* 456 U.S. 798, 824, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)).

■■■■ "Probable cause to search an automobile exists when objective facts, under the totality of the circumstances at the time of the search, would lead a reasonably prudent individual to believe that contraband was located in the automobile." *State v. Irvin,* 210 S.W.3d 360, 362 (Mo. App. W.D.2006). Here, the Ford Thunderbird had out-of-state license plates, the vehicle registration indicated an owner who resided in the state of California, and it was traveling on Interstate 44, a known drug corridor. *State v. Day,* 87 S.W.3d 51, 55 (Mo.App. S.D.2002). After first pulling to the shoulder of the highway after Deputy Crivello had activated his emergency lights, the vehicle then accelerated again and only came to a stop after Deputy Crivello had also activated his siren. Deputy Crivello testified that both Defendant and Johnson were exhibiting involuntary mouth and facial movements that indicated

to him a person who was high on methamphetamine and had "been using some up to days." Defendant implicitly admitted at the time of the search that he was high on methamphetamine. Without any mention by Deputy Crivello of the possibility of the selling of narcotics, Defendant volunteered that, "I love this shit, but I, I'm not selling any. I ain't got no money, I'm not selling it." Defendant had also directly disobeyed Deputy Crivello's repeated orders to stay inside the vehicle and get off his cell phone. Based on the totality of these circumstances, Deputy Crivello had probable cause to search the vehicle and any containers located within it where narcotics might be found and did not need anyone's permission to do so. *Wyoming v. Houghton,* 526 U.S. 295, 302, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999). Defendant's second point is denied.

### Knowing Possession

For his first point, Defendant alleges the trial court erred in overruling his motion for acquittal because the state failed to prove beyond a reasonable doubt that he possessed the methamphetamine. Defendant argues that the amount of methamphetamine found was so minute that it could not be measured and was indicative only of a prior use.

■■■■ Our review of a denial of a motion for acquittal is limited to a determination of whether the State presented sufficient evidence to make a submissible case. *State v. Davis,* 219 S.W.3d 863, 866 (Mo.App. S.D.2007). We review the evidence in the light most favorable to the verdict, granting the State all reasonable inferences from the evidence and disregarding contrary inferences that are not such a natural, logical extension of the

evidence that a reasonable juror would be unable to ignore them. *Id.; State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc 2001). Our review is limited to a determination of whether sufficient evidence existed upon which a reasonable trier-of-fact could have found the defendant guilty beyond a reasonable doubt. *State v. Holman,* 230 S.W.3d 77, 83 (Mo.App. S.D. 2007).

Under Section 195.202, "it is unlawful for any person to possess or have under his control a controlled substance."[5] Section 195.010 defines "[p]ossessed" or "possessing a controlled substance" such that:

> a person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it.

■■■■ In order to sustain a conviction for possession of a controlled substance, the State must show (1) that the defendant consciously and intentionally possessed the substance; and (2) the defendant was aware of the presence and nature of the substance. *State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992).

■■■■ Here, Defendant admits that he had actual possession of the bag that contained the scale. Defendant argues, however, that he did not knowingly and consciously possess the methamphetamine

**5.** Under Section 195.017.4(3)(b), methamphetamine is defined as a controlled substance. Defendant does not appear to challenge the finding that the substance on the scale was methamphetamine.

found on the scale. Defendant's argument is premised on principles derived from *State v. Polk*, 529 S.W.2d 490, 494 (Mo. App.1975) and *State v. Baker*, 912 S.W.2d 541, 545 (Mo.App. W.D.1995), namely, that when a minute amount of controlled substance is involved, such a small amount might only indicate that there had been a past possession and, therefore, more evidence than the mere presence of the minute amount is needed in order to demonstrate a knowing and conscious possession of it.

In *Polk*, police searched a defendant's apartment and found a jewelry box containing "a pill box in which there was a pink capsule and some white powder, two hypodermic needles, two eye-droppers or syringes, and three bottle caps which the police officers identified as 'cookers' for the processing of heroin." 529 S.W.2d at 491. The defendant in *Polk* was charged with illegal possession of a controlled substance. *Id.* at 490. After reviewing the evidence, the *Polk* court held that:

> ... under the peculiar facts and circumstances of this particular case where the only evidence to support the conviction of possession of a controlled substance ... is that an amount of the controlled substance which is so miniscule as to constitute a mere "trace" and which is immeasurable and consumed in the performance of the basic test necessary for identification of the substance is insufficient to support a finding that the accused was knowingly, intentionally and consciously in possession of the controlled substance[.]

*Id.* at 494.

In *Baker*, a defendant was arrested for possession of drug paraphernalia after one crack pipe was found on his person and another was found in his car. 912 S.W.2d at 542. The defendant admitted having smoked crack earlier that day but claimed that the pipe found on his person was one that he had just recently purchased. *Id.* The arresting officer testified that he only arrested the defendant for possession of drug paraphernalia because he had not found any cocaine on the defendant and he was not sure whether there was sufficient cocaine on either pipe to be tested. *Id.* There was no visible unused or unburnt cocaine in the pipes. *Id.* at 544. The pipes were sent to a crime lab for testing where it was determined that not enough crack cocaine was present to weigh. *Id.* at 542. Instead, the pipes were tested for drugs by washing them out with a solvent and then testing the solvent. The solvent then yielded a positive result for cocaine. *Id.* at 542–43. After analyzing several prior Missouri cases, including *Polk*, the *Baker* court concluded that, based on the facts presented before it, insufficient evidence existed to support a finding that the defendant knowingly and consciously possessed the cocaine. *Id.* at 546.

The *Baker* court also included language that appeared to indicate that, in certain situations, if only a minuscule amount of the controlled substance is present, a finding of possession is precluded. *Id.* at 545. However, other courts, including this one, have held that a defendant can knowingly possess trace amounts of a controlled substance that could be classified as mere residue. *See State v. McKelvey*, 129 S.W.3d 456, 459 (Mo.App. S.D.2004); *State v. Mayabb*, 43 S.W.3d 429, 433 (Mo.App. S.D.2001); *State v. Smith*, 808 S.W.2d 24, 26 (Mo.App. E.D.1991).

In *State v. Taylor*, 216 S.W.3d 187 (Mo. App. E.D.2007), a defendant was convicted for possession of cocaine after his vehicle was stopped and police found a crack pipe on the floorboard. A crack pipe was also found in the defendant's wife's purse. 216 S.W.3d at 189–90. The cocaine residue recovered from the pipes was so minimal

as to be unweighable. *Id.* at 191. The court noted, however, that Missouri's drug statutes do not establish a minimum amount necessary to support a conviction for possession of a controlled substance. *Id.* at 192. After reviewing Polk, *Baker,* *Smith,* and *McKelvey,* the Taylor court held that:

> a defendant's guilt must be dependent on his acts and knowledge—whether his knowing possession may be fairly inferred given the *de minimis* amount and all the surrounding circumstances. Thus, although the drug may be an unweighable residue, trace amount, or modicum, the drug must be present, the defendant must know of its presence and nature, and the defendant must possess it—either actually or constructively.

*Id.* at 193.

We agree that the focus is not just on the amount of the drug involved, but, based on all of the surrounding circumstances, whether the defendant knowingly possessed the drug.

In the case at bar, a white, powdery substance was visible on the scale and present in an amount sufficient to allow Deputy Crivello to field test it. If the powder was visible to Deputy Crivello it would also have been visible to Defendant. Defendant first denied that the bag (and therefore the scale within) was his, next admitted that it did belong to him, and finally stated that his sister was the person who had packed the bag. Defendant admitted that he had been using methamphetamine and that he was high when Deputy Crivello conducted his search. Perhaps more tellingly, Defendant tells the officer he is not *selling* any methamphetamine when Deputy Crivello had not even mentioned that possibility. Defendant also admits that he had actual possession of the bag.

On appeal, Defendant argues that he did not know what the contents of the bag were. In so arguing, Defendant ignores our standard of review which requires us to grant the State all reasonable inferences from the evidence. Based on Defendant's equivocal answers regarding ownership of the bag and his unsolicited statement that he was "not selling," it is reasonable to infer that Defendant's actions evidenced a consciousness of guilt and that he knew very well what was in the bag. Based on the foregoing evidence and the reasonable inferences that can be drawn therefrom we hold that the evidence presented was sufficient to uphold a finding that Defendant knowingly possessed the methamphetamine. Defendant's first point is denied.

The judgment of the trial court is affirmed.

Lynch, C.J., and BARNEY, P.J., Concur.